UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09 CV 1909 DDN |
| ) | |
| JUST MORTGAGE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before the court on the motions of defendant Just Mortgage, Inc. for an extension of time (Doc. 47) and to compel (Docs. 48, 67), and the motions of plaintiff CitiMortgage, Inc. for a protective order (Docs. 50, 59), and to compel (Doc. 64). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Oral arguments were heard on April 21, 2011.

The parties dispute the scope and breadth of discovery. Defendant argues that the information sought in its discovery requests is relevant to its possible affirmative defense of breach of implied covenant of good faith and fair dealing, as well as to the viability of plaintiff's breach of contract claim and plaintiff's mitigation of damages. Plaintiff argues that the discovery requests are overly broad, that compliance would be overly burdensome, and that the information sought is irrelevant, given that plaintiff had exclusive discretion under the parties' contract.

Given the volume of discovery requests that are at issue in the parties' motions to compel and motions for protective orders,[1] and the statements of counsel that certain disputes have been resolved, the court will provide guidance regarding the permissible scope of discovery as it

---

[1] In their filings, the parties seek to compel compliance with and/or protection from over 100 different interrogatories, requests for production, notice of deposition topics, and requests for admission. (Docs. 48, 50, 59, 64, 67.)

pertains to the disputed discovery requests, but abstain from resolving individual disputes. The parties will then be permitted to re-file any discovery disputes that remain unresolved by the court's direction.

**Scope of Discovery**

Because only relevant information is discoverable, the court must first look to whether the information sought in the disputed discovery requests is relevant. Fed. R. Civ. P. 26(b)(1) advisory committee's note (2006). In doing so, the court must examine the pleadings and determine whether the disputed discovery "encompass[es] any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Murphy v. Kmart Corp., No. CIV 07-5080-KES, 2008 WL 5429643, at *4 (D.S.D. Dec. 27, 2008); see also Fed. R. Civ. P. 26(b)(1) advisory committee's note (2006). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 382 (D. Kan. 2005) (internal quotation omitted).

**Plaintiff's Complaint**

In its first amended complaint, plaintiff alleges that it engages in business of purchasing, re-selling, and servicing residential mortgage loans on the secondary mortgage market, while defendant engages in business of originating, sourcing, and reselling residential mortgage loans. (Doc. 29 at ¶ 1.)

Plaintiff has purchased loans from defendant since 2005. (Id. at ¶ 2.) As of August 4, 2005, the parties' relationship has been governed by a contract entitled "Correspondent Agreement Form 200" ("Agreement") and the amendments thereto, including the Delegated Underwriting Addendum, the CMI Select Addendum, and the Bulk Purchase Amendment. (Id. at ¶¶ 2, 15.) The parties' Agreement also incorporated the terms of plaintiff's Correspondent Manual. (Id. at ¶¶ 3, 25; Doc. 29-1.)

Under the Agreement, defendant represented, warranted, and covenanted that it had or would promptly review the Correspondent Manual

and fully comply with the terms, conditions, requirements, and procedures contained therein:

> 2. REPRESENTATIONS AND WARRANTIES
>
> [Defendant] represents, warrants and covenants through the term of this Agreement as follows:
>
> (g) That it has obtained and reviewed or will, upon execution of this Agreement, promptly obtain and review the CMI Manual and will fully comply with its terms, conditions, requirements, and procedures.

(Id. at ¶ 20; Doc. 29-1.)

The Agreement also contained an indemnification provision:

> 10. INDEMNIFICATION
>
> [Defendant] agrees to indemnify and hold [plaintiff] harmless from any and all claims, actions and costs, including reasonable attorneys' fees and costs, arising from (i) [defendant's] performance or failure to perform under the terms, conditions or obligations of this Agreement or the CMI Manual (including but not limited to [defendant's] failure to timely deliver all documents and records associated with or related to all Loans purchased by [plaintiff] pursuant to this Agreement), [or] (ii) any fraud, misrepresentation or breach of any representation, warranty or covenant contained [in] this Agreement or the CMI Manual . . . ."

(Doc. 29 at ¶¶ 21; Doc. 29-1.)

The Agreement also granted plaintiff the sole and exclusive discretion to determine whether defendant had improperly underwritten or originated a loan which defendant subsequently sold to plaintiff:

> 11. CURE OR REPURCHASE
>
> If [plaintiff], in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:
>
> (i) was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;
>
> (ii) was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), Correspondent,

>     Correspondent's directors, officers, employees, agents,
>     independent contractors and/or affiliates, or any other party
>     providing information relating to said Loan;
>
>                              . . .
>
>         (v) was subject to an Early Payment Default (as defined
>     in the CMI Manual), an Early Payoff (as defined in the CMI
>     Manual) or any other payment related to defect (as defined in
>     the CMI Manual).

(Doc. 29 at ¶¶ 22, 23; Doc. 29-1.) If plaintiff determined defendant had improperly underwritten or originated a loan sold to plaintiff, then defendant was obligated to cure those deficiencies or repurchase the loan:

> [Defendant] will, upon notification by [plaintiff], correct or cure such defect within the time prescribed by [plaintiff] to the full and complete satisfaction of [plaintiff]. If, after receiving such notice from [plaintiff], [defendant] is unable to correct or cure such defect within the prescribed time, [defendant] shall, at [plaintiff's] sole discretion, either (i) repurchase such defective Loan from [plaintiff] at the price required by [plaintiff] ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as [plaintiff] may deem appropriate. . . .

(Doc. 29 at ¶¶ 22, 23; Doc. 29-1.)

During the course of their dealings, defendant sold plaintiff at least 27 loans ("Loans") that were underwritten or originated based upon inaccurate information or material misrepresentations made by the borrower or defendant. (Doc. 29 at ¶ 26.) These loans (a) contained discrepancies in the loans regarding property ownership, income representations, prior undisclosed mortgages or other debts, and occupancy, (b) were subject to early payment defaults, and/or (c) did not follow applicable Fannie Mae, Freddie Mac, Federal Housing Administration, VA, and/or HUD requirements and industry standards were not followed. (Id.)

Plaintiff notified defendant of the defects in the Loans and demanded defendant cure the defects or repurchase the Loans. (Id. at ¶¶ 5, 27, 28, 60.) Defendant failed to cure the Loan defects and refused

to repurchase the Loans. (Id.) Plaintiff alleges defendant breached the Agreement by refusing to repurchase the Loans after failing to cure the Loan defects. (Id. at ¶¶ 60, 61.) Plaintiff alleges that it suffered damages in excess of $9,000,000.00 as a result of defendant's breach. (Id. at ¶¶ 7, 61.)

### Implied Covenant of Good Faith and Fair Dealing

"Missouri law implies a covenant of good faith and fair dealing in every contract." Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corrs., 977 S.W.2d 266, 271 (Mo. 1998) (en banc). This covenant is implied even "where a contract confers on one party a discretionary power affecting the rights of the other." City of St. Joseph, Mo. v. Lake Contrary Sewer Dist., 251 S.W.3d 362, 370 (Mo. Ct. App. 2002). Under those circumstances, the covenant precludes exercise of the party's discretionary power "to deprive the other party of the benefit of the contractual relationship or evade the spirit of the bargain." Id.; see also BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 914 (8th Cir. 2007). Consequently, "the question is not whether the party made an erroneous decision" but rather "whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." Mo. Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 48 (Mo. Ct. App. 2002).

### Application

The court will now examine the relative bounds of discovery. In doing so, the court is mindful to avoid ruling on the validity of either party's claims or defenses when tailoring the scope of discovery. See Unlimited Resources, Inc. v. Deployed Resources, LLC, No. 3:07-cv-961-J-12MCR, 2009 WL 212188, at *3 (M.D. Fla. Jan. 29, 2009); Central Georgia Anesthesia Services, P.C. v. Equitable Life Assur. Soc., No. 5:06-CV-25 (CAR), 2007 WL 2128184, at *2 (M.D. Ga. July 25, 2007). In making its determinations, the court has considered the permissible boundaries of discovery established by Judge Frederick R. Buckles of this court when faced with similar discovery disputes in CitiMortgage, Inc. v. NL, Inc., et al., 4:09 CV 2104 FRB. See Docs. 63-1, 67, 70, 77 therein.

**Plaintiff's Exercise of Discretion Regarding the Loans at Issue**

Defendant is entitled to seek information regarding plaintiff's determination that the Loans at issue were defective. While an erroneous determination that a defect existed would not breach of the covenant, an arbitrary or capricious determination would. Mo. Consol. Health Care Plan, 81 S.W.3d at 48. Thus, defendant has broad permission to seek information concerning plaintiff's exercise of discretion as it relates to the Loans at issue, including plaintiff's determination that defendant did not comply with the terms of the Agreement, the particular policies guiding that determination, any appeals by defendant regarding plaintiff's determination.

**Blanket Requests for Third Party Loan Information**

That said, defendant's blanket requests for documents and memoranda regarding loan transactions between plaintiff and third parties and information presented to third parties regarding classes of loans are not sufficiently relevant to demand the resulting burdensome production. A party cannot, by virtue of raising a defense of bad faith, seek limitless discovery through which it hopes to unearth supporting evidence. Cf. Logan v. Comm. Union Ins. Co., 96 F.3d 971, 977 (7th Cir. 1996) ("[A] naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications."). Such requests must be tailored within the confines of reasonableness and likelihood to result in the discovery of relevant evidence.

**Knowledge of Defective Guidelines in the Parties' Agreement**

But, defendant may seek information regarding plaintiff's prior knowledge of defective guidelines in the parties' Agreement, as it directly relates to the Loans at issue. Environmental Protection, Inspection, and Consulting, Inc. v. City of Kansas City, Mo., 37 S.W.3d 360, 367-68 (Mo. Ct. App. 2000). The covenant of good faith and fair dealing demands each party "comport[] with the reasonable expectations of the parties . . . in light of their purposes in contracting." Schell v. LifeMark Hospitals of Mo., 92 S.W.3d 222, 231 (Mo. Ct. App. 2002) (internal quotations and emphasis omitted). To that end, defendant may

seek information regarding plaintiff's understanding of the profitability of the Loans at issue, plaintiff's understanding of the efficacy of its underwriting and origination guidelines contained in the parties' Agreement for the Loans at issue, and plaintiff's determination that defects were present in the Loans at issue.  But, as previously discussed, defendant may not pursue blanket requests for information regarding plaintiff's internal standards and guidelines for issuing classes of loans, the profitability of loans not at issue, or defects found in loans not at issue.

**Resale of the Loans at Issue**

Further, defendant may seek information regarding the resale of the Loans at issue and third party demands for repurchase, insofar as such information is relevant to plaintiff's exercise of discretion and damages calculation.  Defendant is not permitted to seek general discovery regarding plaintiff's sale and/or securitization of other loans, nor may defendant seek information regarding plaintiff's financial agreements with and disclosures to third parties as such information is not relevant to damages arising from the Loans at issue.

### III.  MOTION FOR EXTENSION OF TIME

Defendant seeks a 60-day extension of time to disclose its experts, as required by Fed. R. Civ. P. 26(a)(2).  (Doc. 47.)  Defendant argues the extension is necessary because of the discovery disputes between the parties, the complexity of the case, and the absence of prejudice to plaintiff.  Plaintiff argues that defendant seeks the extension in bad faith, only hoping to delay the process of the action.

Given the complexity of the case, the disputes between the parties concerning the scope of discovery, and the potential comparative prejudice to the parties, the court will grant defendant additional time to disclose its experts.  To avoid further delays in the progress of this action, defendant will have 30 days from the issuance of this Memorandum and Order to disclose its experts.  All deadlines associated therewith, including plaintiff's disclosure of rebuttal experts, will also be extended 30 days.

## VI. CONCLUSION

For the reasons and to the extent discussed above,

**IT IS HEREBY ORDERED** that the motion of defendant Just Mortgage, Inc. for an extension of time (Doc. 47) is sustained. Defendant has 30 days from issuance of this Memorandum and Order to disclose its experts in compliance with Fed. R. Civ. P. 26(a)(2). All deadlines associated with the disclosure of defendant's experts are extended 30 days.

**IT IS FURTHER ORDERED** that the motion of defendant to compel (Doc. 48) is denied without prejudice.

**IT IS FURTHER ORDERED** that the motion of plaintiff for a protective order (Doc. 50) is denied as without prejudice.

**IT IS FURTHER ORDERED** that the amended motion of plaintiff for a protective order (Doc. 59) denied without prejudice.

**IT IS FURTHER ORDERED** that the motion of plaintiff to compel (Doc. 64) is denied without prejudice.

**IT IS FURTHER ORDERED** that the motion of defendant to compel (Doc. 67) is denied without prejudice.

**IT IS FURTHER ORDERED** that the parties may within 20 days reissue their requests for discovery consistent with this Order and Memorandum. The parties shall have 20 days to respond to said requests for discovery.

**IT IS FURTHER ORDERED** that defendant shall have until close of business on August 22, 2011 to respond to the pending motion for summary judgment. Plaintiff shall have ten days thereafter to file a reply.

**IT IS FURTHER ORDERED** that a hearing on the pending motion for summary judgment is set for **September 15, 2011 at 10:00 a.m.**

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 28, 2011.