UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CITIMORTGAGE, INC.,              )
                                 )
            Plaintiff,           )
                                 )
      v.                         )      No. 4:09 CV 1909 DDN
                                 )
JUST MORTGAGE, INC.,             )
                                 )
            Defendant.           )

**MEMORANDUM AND ORDER ON GROUP 2 AND GROUP 3 LOANS**

This action is before the court on the motions of plaintiff CitiMortgage, Inc. for summary judgment as to the Group 2 Loans (Doc. 164) and the Group 3 Loans (Doc. 191).[1] The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10.)

**I.  BACKGROUND**

On November 20, 2009, plaintiff CitiMortgage, Inc. commenced this breach of contract action against defendant Just Mortgage, Inc. (Doc. 1.) On August 2, 2010, CitiMortgage filed its first amended complaint. (Doc. 29.) In its first amended complaint, CitiMortgage alleges that Just Mortgage delivered twenty-seven loans that failed to conform to the terms of the parties' contract and, after demand by CitiMortgage, refused to cure or repurchase these loans, thereby breaching the contract. (Id.) CitiMortgage seeks damages, costs, attorney's fees, pre-judgment interest, post-judgment interest, and an order compelling Just Mortgage to perform its obligations under the contract, namely, repurchasing the twenty-seven loans at issue. (Id.)

---

[1]Pursuant to the court's December 21, 2010 Second Amended Case Management Order, the twenty-seven loans identified in CitiMortgage's amended complaint were divided into three groups. (Doc. 45.) On March 29, 2012, the court sustained CitiMortgage's motion for summary judgment as to the Group 1 Loans. (Doc. 187.) CitiMortgage's pending motions for summary judgment concern the Group 2 Loans (Doc. 164) and the Group 3 Loans (Doc. 191).

On January 24, 2012, the court heard oral argument on CitiMortgage's motion for summary judgment as to the Group 1 Loans.  (Doc. 167.)  On March 29, 2012, the court sustained CitiMortgage's motion for summary judgment as to the Group 1 Loans (Doc. 167) and sustained CitiMortgage's motion to exclude the opinions of defendant's expert, Thomas A. Myers (Doc. 75).  <u>See</u> March 29, 2012 <u>Memorandum and Order</u> (Doc. 187), 2012 WL 1060122 (E.D. Mo. Mar. 29, 2012).[2]

## II.  PRIOR EVIDENTIARY RULINGS

In opposing CitiMortgage's motion for summary judgment on the Group 1 Loans, Just Mortgage relied largely on the reports and deposition testimony of its expert, Thomas A. Myers.  In his reports and deposition testimony, Myers made a number of legal conclusions concerning the parties' contract, namely, that (a) § 2(i) and § 11(ii) are inconsistent, create an ambiguity, and cannot be reasonably read as CitiMortgage proposed; and (b) CitiMortgage was not acting in good faith when it demanded that Just Mortgage cure or repurchase the loans.  (Doc. 150.)  CitiMortgage subsequently moved to exclude these opinions.  (Doc. 167.)  In its March 29 Order, the court sustained CitiMortgage's motion to exclude on the basis that the reports and deposition testimony were improper legal conclusions and concerned matters irrelevant to this breach of contract action.  (Doc. 187 at 2-5.)

In addition, earlier in this litigation, Just Mortgage filed motions for judicial notice of (a) the testimony of Richard Bowen, former Senior Vice President and Business Chief Underwriter of CitiMortgage, Inc., concerning the frequency of foreclosures across the nation and CitiMortgage's knowledge of defective loans, that was given before the Congressional Financial Crisis Inquiry Commission; and (b) information contained in the Stipulation and Order of Settlement and Dismissal in <u>United States ex rel. Sherry A. Hunt v. Citigroup, Inc., et al.</u>, 11 CV 5473 (VM), Doc. 13 (S.D.N.Y. Feb. 15, 2012), concerning CitiMortgage's national loan practices and related matters.  (Docs. 156, 176, 200.)  The court denied these motions in accordance with the March 29 Order, in

---

[2]For the sake of brevity, the court refers to its March 29, 2012 Memorandum and Order as the "March 29 Order."

- 2 -

which the court explained that these categories of information were not
relevant to any claims or defenses in this action.  (Doc. 187 at 2, n.3
and 25; Doc. 202.)

To the extent Just Mortgage relies on this evidence in opposing
CitiMortgage's motions for summary judgment on the Group 2 and Group 3
Loans, in accordance with and for the reasons set forth in the court's
March 29 Order (Doc. 187) and the court's May 11, 2012 Memorandum and
Order denying Just Mortgage's motions for judicial notice (Doc. 202),
this evidence is excluded and will not be considered by the court when
adjudicating the Group 2 and Group 3 Loan motions for summary judgment.

### III.  MOTIONS FOR SUMMARY JUDGMENT

CitiMortgage moves for summary judgment on the Group 2 and Group 3
Loans, arguing that each of the Group 2 and Group 3 Loans contained
inaccuracies, misrepresentations, and related defects; and that it was
thus entitled to demand that Just Mortgage cure or repurchase these loans
pursuant to § 11 of the contract. CitiMortgage also argues that Just
Mortgage's subsequent failure to cure or repurchase these loans was a
breach of the contract.  (Docs. 164, 165, 191, 192.)

Just Mortgage responds that §§ 2(i), 10, and 11(ii) of Form 200 and
§ 2202 of the CMI Manual[3] are ambiguous and conflicting regarding its
liability for inaccuracies, misrepresentations, and omissions by loan
applicants, appraisers, escrow agents, title companies, closers, and
credit reporting agencies.  Just Mortgage also argues that CitiMortgage
violated its implied duty of good faith and fair dealing; that the terms
of the contract are unconscionable; and that it made an unilateral
mistake of fact when interpreting § 2(i).  (Docs. 175, 198.)

CitiMortgage replies that there is no ambiguity concerning § 11(i),
(iv), or (v), and that Just Mortgage does not dispute that CitiMortgage
had the right to demand cure or repurchase of the Group 2 and Group 3
Loans under these provisions, independent of § 11(ii). CitiMortgage also
argues that §§ 2(i), 10, and 11(ii) of Form 200 and § 2202 of the CMI
Manual are not ambiguous or conflicting because they serve different

---

[3]As noted below, both of these documents were incorporated into the
parties' contract. (Doc. 166 at ¶¶ 8-10; Doc. 193 at ¶¶ 8-10.)

functions in the contract.   CitiMortgage further argues that its
repurchase demands were made in good faith; that the contract is not
unconscionable; and that Just Mortgage should not be excused from its
contractual obligations by any alleged unilateral mistake of fact.
(Docs. 206, 210.)

### III.   STATEMENT OF UNDISPUTED FACTS

In its March 29 Order, the court set forth the relevant background
facts detailing CitiMortgage's loan purchasing program (Program) and the
parties' contractual relationship.   The court adopts and incorporates
those facts insofar as they are relevant and applicable to the pending
motions for summary judgment on the Group 2 and Group 3 Loans.

The court sets forth the additional undisputed facts relevant to the
Group 2 and Group 3 Loans, below.

### A.   Group 2 Loans

Of the 3,587 loans Just Mortgage has sold to CitiMortgage under the
parties' agreement (Agreement)[4] since 2006, ten compose the Group 2 Loans:
(1) Alraqeeb Loan #XXXXX4023; (2) Amaya Loan #XXXXX7094; (3) Calvillo
Loan #XXXXX5200; (4) Castro Loan #XXXXX6064; (5) Corona Loan #XXXXX8423;
(6) De La Rosa Loan #XXXXX1148; (7) Gutierrez Loan #XXXXX4703;
(8) Hernandez Loan #XXXXX8430; (9) Latief Loan #XXXXX1191; and (10) Owen
Loan #XXXXX3726.   (Doc. 166 at ¶¶ 18-20.)

Purchases

On September 21, 2007, CitiMortgage purchased from Just Mortgage the
Amaya Loan #XXXXX7094, for residential property located at 9436 Waterford
Drive, Manassas, VA 20110.   (Id. at ¶ 22.)

On February 27, 2008, CitiMortgage purchased from Just Mortgage the
Calvillo Loan #XXXXX5200, for residential property located at 2855 Sonora
Place, Riverside, CA 92504.   (Id. at ¶ 23.)

---

[4]As stated above and previously in the court's March 29 Order, the
parties' agreement is composed of a "Correspondent Agreement Form 200,"
a "DBA Addendum," and a "Delegated Underwriting Addendum."   (Doc. 166 at
¶¶ 8-10; Doc. 193 at ¶¶ 8-10.)

On March 24, 2008, CitiMortgage purchased from Just Mortgage the Corona Loan #XXXXX8423, for residential property located at 18438 East Citrus Edge Street, Azusa, CA 91702. (Id. at ¶ 25.)

On April 11, 2008, CitiMortgage purchased from Just Mortgage the Guiterrez Loan #XXXXX4703, for residential property located at 45 Maleena Mesa Street, 1817 Building 18, Henderson, NV 89074. (Id. at ¶ 27.)

On April 25, 2008, CitiMortgage purchased from Just Mortgage the Owen Loan #XXXXX3726, for residential property located at 219 Westlake Drive, San Marcos, CA 92869. (Id. at ¶ 30.)

On May 1, 2008, CitiMortgage purchased from Just Mortgage the Hernandez Loan #XXXXX8430, for residential property located at 45 Maleena Mesa Street, 1624, Henderson, NV 89074. (Id. at ¶ 28.)

On June 25, 2008, CitiMortgage purchased from Just Mortgage the Latief Loan #XXXXX1191, for residential property located at 111 36 178th Street, Jamaica, NY 11433. (Id. at ¶ 29.)

On September 29, 2008, CitiMortgage purchased from Just Mortgage the Castro Loan #XXXXX6064, for residential property located at 1627 East 53rd Street, Los Angeles, CA 90011. (Id. at ¶ 24.)

On October 29, 2008, CitiMortgage purchased from Just Mortgage the De La Rosa Loan #XXXXX1148, for residential property located at 14608 McGee Drive, Whittier, CA 90604. (Id. at ¶ 26.)

On October 31, 2008, CitiMortgage purchased from Just Mortgage the Alraqeeb Loan #XXXXX4023, for residential property located at 12582 88 Adelphia Avenue San Fernando Area, Los Angeles, CA 91340. (Id. at ¶ 21.)

Defects[5]

---

[5]As it did with the Group 1 Loans, Just Mortgage attempts to dispute various assertions regarding the alleged Group 2 and Group 3 Loan defects on the basis that it was unaware of the defects; that it complied with CitiMortgage's underwriting and origination guidelines; and that CitiMortgage breached the implied covenant of good faith and fair
(continued...)

- 5 -

After purchasing the Group 2 Loans from Just Mortgage, CitiMortgage became aware of facts indicating that information related to the borrowers' incomes and employment histories in the Group 2 Loan application packages were misrepresented or materially inaccurate, or indicating that the Group 2 Loans were otherwise defective under the terms of the Agreement. (<u>Id.</u> at ¶ 32.)

<u>Alraqeeb Loan #XXXXX4023</u>

After purchasing the Alraqeeb Loan from Just Mortgage, CitiMortgage discovered that the mortgage insurance on the loan had been rescinded. (<u>Id.</u> at ¶ 33.)

<u>Amaya Loan #XXXXX7094</u>

After purchasing the Amaya Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's employment status. (<u>Id.</u> at ¶ 34.)

CitiMortgage also discovered that the loan application package for the Amaya Loan misrepresented the borrower's income. (<u>Id.</u> at ¶ 35.) After inputting the correct income, the debt-to-income ratio for the Amaya Loan exceeded the applicable underwriting guidelines. (<u>Id.</u> at ¶ 36.)

CitiMortgage was required to repurchase the Amaya Loan from Freddie Mac. (<u>Id.</u> at ¶ 37.)

<u>Calvillo Loan #XXXXX5200</u>

After purchasing the Calvillo Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the

---

[5](...continued)
dealing. <u>See</u> (Doc. 175 at 12-23; Doc. 177 at ¶¶ 32-61; Doc. 198 at 10-16; Doc. 199 at ¶¶ 29-45.)

As the court explained in its March 29 Order, these arguments do not create issues of material fact concerning the existence of defects in the Group 2 and Group 3 Loans. Therefore, the facts regarding Group 2 and Group 3 Loan defects are treated as undisputed for purposes of the instant motions for summary judgment, insofar as they are contested only on these grounds.

borrower's income.  (Id. at ¶ 38.)  After inputting the correct income, the debt-to-income ratio for the Calvillo Loan exceeded the applicable underwriting guidelines.  (Id. at ¶ 39.)

CitiMortgage also discovered that the loan application package for the Calvillo Loan misrepresented that the borrower would occupy the property as a primary residence.  (Id. at ¶ 40.)

The mortgage insurance on the Calvillo Loan was also rescinded.  (Id. at ¶ 41.)

CitiMortgage was required to repurchase the Calvillo Loan from Fannie Mae.  (Id. at ¶ 42.)

Castro Loan #XXXXX6064

After purchasing the Castro Loan from Just Mortgage, CitiMortgage was required to repurchase it from Freddie Mac because the loan application package failed to include documents that verified the borrower's assets and misrepresented that the borrowers would occupy the property as a primary residence.  (Id. at ¶ 43.)

Corona Loan #XXXXX8423

After purchasing the Corona Loan from Just Mortgage, CitiMortgage was required to repurchase it from Fannie Mae.[6]  (Id. at ¶ 46.)

De La Rosa Loan #XXXXX1148

---

[6]CitiMortgage also asserts that after purchasing the Corona Loan from Just Mortgage, it discovered that the loan application package misrepresented the borrower's income and that after inputting the correct income, the debt-to-income ratio exceeded the applicable underwriting guidelines.  (Doc. 166 at ¶¶ 44-45.)  Just Mortgage disputes these factual assertions, arguing that the ratio was permissive.  (Doc. 177 at ¶¶ 42-50.)  Therefore, these facts are treated as disputed.

After purchasing the De La Rosa Loan from Just Mortgage, CitiMortgage discovered that the De La Rosa loan application package misrepresented the borrower's employment status.[7]  (<u>Id.</u> at ¶ 47.)

CitiMortgage was required to repurchase the De La Rosa Loan from Fannie Mae.[8]  (<u>Id.</u> at ¶ 49.)

<u>Gutierrez Loan #XXXXX4703</u>

After purchasing the Gutierrez Loan from Just Mortgage, CitiMortgage was required to repurchase it from Fannie Mae.[9]  (<u>Id.</u> at ¶ 51.)

<u>Hernandez Loan #XXXXX8430</u>

After purchasing the Hernandez Loan from Just Mortgage, CitiMortgage discovered that the seller contributions for the loan exceeded the applicable guidelines.  (<u>Id.</u> at ¶ 52.)

CitiMortgage was required to repurchase the Hernandez Loan from Fannie Mae.  (<u>Id.</u> at ¶ 53.)

<u>Latief Loan #XXXXX1191</u>

After purchasing the Latief Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's debts by failing to disclose at least two additional mortgages.  (<u>Id.</u> at ¶ 54.)  After including the correct debt, the debt-

---

[7]Just Mortgage disputes that the borrower's employment was misrepresented, but in doing so makes no citation to the record and no factually particularized argument.  (Doc. 177 at ¶ 47.)  Thus, the court treats this fact as undisputed.  <u>See</u> E.D. Mo. L.R. 7-4.01(E).

[8]CitiMortgage also asserts that it discovered that the loan application package for the De La Rosa Loan failed to include required documentation verifying the borrower's assets.  (Doc. 166 at ¶ 48.)  Just Mortgage disputes this assertion, arguing that it produced an asset verification document.  (Doc. 177 at ¶ 54.)  Therefore, this fact is treated as disputed.

[9]Citimortgage also asserts that after purchasing the Gutierrez Loan from Just Mortgage, it discovered that the seller contributions for the loan exceeded applicable guidelines.  (Doc. 166 at ¶ 50.)  Just Mortgage disputes this assertion, arguing that the seller contributions of the Gutierrez Loan were within the permissive limits.  (Doc. 177 at ¶¶ 55-60.)  Therefore, this fact is treated as disputed.

to-income ratio for the Latief Loan exceeded applicable underwriting guidelines. (<u>Id.</u> at ¶ 55.)

CitiMortgage also discovered that the loan application package for the Latief Loan failed to include required documentation verifying that the borrower had sufficient funds to close the loan. (<u>Id.</u> at ¶ 56.)

CitiMortgage further discovered that the loan application package for the Latief Loan failed to include a copy of the final title insurance policy. (<u>Id.</u> at ¶ 57.)

CitiMortgage was required to repurchase the Latief Loan from Freddie Mac. (<u>Id.</u> at ¶ 58.)

<u>Owen Loan #XXXXX3726</u>

After purchasing the Owen Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's debts by failing to disclose at least two additional mortgages. (<u>Id.</u> at ¶ 59.) After including the correct debt, the debt-to-income ratio for the Owen Loan exceeded the applicable underwriting guidelines. (<u>Id.</u> at ¶ 60.)

CitiMortgage was required to repurchase the Owen Loan from Freddie Mac. (<u>Id.</u> at ¶ 61.)

<u>Form 1003</u>

A borrower, or someone on behalf of the borrower, must complete a Form 1003 when applying for a residential mortgage loan. (<u>Id.</u> at ¶ 66.) Form 1003 expressly warns that any misrepresentation related to the information provided therein will expose the borrower to civil and criminal penalties. (<u>Id.</u> at ¶ 67; Doc. 166-12.) Each of the Group 2 Loans had a corresponding Form 1003. (Doc. 166 at ¶ 68; Doc. 166-12.)

<u>CitiMortgage's Demands for Cure or Repurchase</u>

CitiMortgage found that the inaccuracies, misrepresentations, and other defects in the Group 2 Loans were defects material to the origination and underwriting decisions for each of the Group 2 Loans. (Doc. 166 at ¶ 62.) Failure to disclose the borrower's liabilities and to ensure the borrower's loan complies with the Agreement renders the

borrower's debt-to-income ratio inaccurate and misleading to CitiMortgage. (Id. at ¶¶ 63-64.) This impairs CitiMortgage's ability to assess accurately the risks associated with loans, including the ability to collect payments from the borrower. (Id.) Just Mortgage's promises and warranties under the Agreement, namely, that these defects were not present and its promise to cure or repurchase any loan where such defects were present, were material to CitiMortgage's decision to purchase the Group 2 Loans from Just Mortgage. (Id. at ¶ 65.)

Based on the information obtained by CitiMortgage concerning the inaccuracies, misrepresentations, and other defects in the Group 2 Loans, CitiMortgage, in its sole and exclusive discretion, determined that the Group 2 Loans were underwritten and/or originated based on materially inaccurate information, material misrepresentations, or were otherwise in violation of the Agreement. (Id. at ¶ 69.)

CitiMortgage sent written notices to Just Mortgage advising of the defects in the Group 2 Loans and demanding that Just Mortgage cure the defects or repurchase the Group 2 Loans pursuant to the Agreement (Group 2 Demand Letters). (Id. at ¶ 70; Doc. 166-13.) CitiMortgage either is the current holder of the Group 2 Loans or was the holder at the time it demanded repurchase of the Group 2 Loans and exercised its rights under § 11 of the Agreement. (Doc. 166 at ¶ 31.) Just Mortgage failed to cure the defects in the Group 2 Loans or to repurchase the Group 2 Loans in response to CitiMortgage's Group 2 Demand Letters. (Id. at ¶ 72.)

As a result, CitiMortgage issued final notices to Just Mortgage demanding that Just Mortgage repurchase the Group 2 Loans (Group 2 Loans Repurchase Letters). (Id. at ¶ 73; Doc. 166-14.) To date, Just Mortgage has not repurchased any of the Group 2 Loans. (Doc. 166 at ¶ 75.)

Repurchase Price

- 10 -

Based on the application of the Repurchase Price formula found in the CMI Manual,[10] the amounts due to CitiMortgage from Just Mortgage, if Just Mortgage was obligated to repurchase the Group 2 Loans,[11] would be:

| | |
|---|---|
| Amaya Loan: | $187,375.44 |
| Arlaqeeb Loan: | $353,440.90 |
| Calvillo Loan: | $242,711.31 |
| Castro Loan: | $545,509.11 |
| Corona Loan: | $416,471.34 |
| De La Rosa Loan: | $371,635.77 |
| Gutierrez Loan: | $227,219.95 |
| Hernandez Loan: | $177,700.66 |
| Latief Loan: | $632,887.63 |
| Owen Loan: | $192,749.42 |
| TOTAL: | $3,347,701.53 |

(Id. at ¶¶ 78-88.)

**B.  Group 3 Loans**

Of the 3,587 loans Just Mortgage has sold to CitiMortgage under the parties' agreement (Agreement) since 2006, seven compose the Group 3 Loans: (1) Grisales Loan #XXXXX1461; (2) Kwon Loan #XXXXX8730; (3) Mahinan Loan #XXXXX7120; (4) Nieto Loan #XXXXX6392;[12] (5) Rajikumar

---

[10]Additional information concerning the Repurchase Price formula found in the CMI Manual is set forth in the court's March 29 Order.  See (Doc. 187 at 17.)

[11]As with the Group 1 Loans, Just Mortgage disputes only that it is not required to repurchase the Group 2 Loans; Just Mortgage does not challenge the amounts of the Repurchase Prices derived from CitiMortgage's application of the Repurchase Price formula to the Group 2 Loans.  (Doc. 177 at ¶¶ 78-88.)

[12]Although stated as "Nieto Loan #XXXXX4831" in CitiMortgage's statement of facts and not disputed by Just Mortgage, this loan number appears to be a typographical error derived from imposing the address into the loan number.  The Nieto Loan bears the number "#XXXXX6392." (Doc. 45 at 3; Doc. 193-10 at 4.)  This apparent typographical error is noted only for clarity purposes; it has no impact on the substantive issues before the court.

Loan #XXXXX4551;[13] (6) Rodriguez Loan #XXXXX9728; and (7) Shin Loan #XXXXX6205.  (Doc. 193 at ¶¶ 18-20.)

<u>Purchases</u>

On September 11, 2007, CitiMortgage purchased from Just Mortgage the Kwon Loan #XXXXX8730, for residential property located at 15160 West Riviera Drive, Surprise, AZ 85379.  (<u>Id.</u> at ¶ 22.)

On December 29, 2007, CitiMortgage purchased from Just Mortgage the Rajkumar Loan #XXXXX4551, for residential property located at 3025 Greystone Loop 102, Kissimmee FL 34741.  (<u>Id.</u> at ¶ 25.)

On January 28, 2008, CitiMortgage purchased from Just Mortgage the Grisales Loan #XXXXX1461, for residential property located at 3300 NE 192 Street, Unit #411, Miami FL 33180.  (<u>Id.</u> at ¶ 21.)

On February 8, 2008, CitiMortgage purchased from Just Mortgage the Mahinan Loan #XXXXX7120, for residential property located at 45 Maleena Mesa St. Bldg. 15, Unit #1515, Henderson NV 89074.  (<u>Id.</u> at ¶ 23.)

On February 15, 2008, CitiMortgage purchased from Just Mortgage the Nieto Loan #XXXXX6392, for residential property located at 4831 East Colorado Avenue, Las Vegas NV 89104.  (<u>Id.</u> at ¶ 24.)

On February 29, 2008, CitiMortgage purchased from Just Mortgage the Shin Loan #XXXXX6205, for residential property located at 2201 Nolita Court, Nolansville, TN 37135.  (<u>Id.</u> at ¶ 27.)

On April 14, 2008, CitiMortgage purchased from Just Mortgage the Rodriguez Loan #XXXXX9728, for residential property located at 3472 Broadmoor Blvd., San Bernadino CA 92404.  (<u>Id.</u> at ¶ 26.)

<u>Defects</u>

After purchasing the Group 3 Loans from Just Mortgage, CitiMortgage became aware of facts indicating that information related to the

---

[13]Similarly, in its statement of facts, CitiMortgage states the loan number for the Rajikumar Loan as "#XXXXX7551" and "#XXXXX7511."  <u>Compare</u> (Doc. 193 at 5) with (<u>Id.</u> at 4).  The latter appears to be a typographical error; the Rajikumar Loan bears the number "#XXXXX7551." (Doc. 45 at 2; Doc. 193-10 at 5.)  Regardless, this, too, bears no impact on the issues before the court; this distinction is noted for clarification only.

borrowers' incomes and employment histories in the Group 3 Loan application packages was misrepresented or materially inaccurate, or that the Group 3 Loans were otherwise defective under the terms of the Agreement.  (Id. at ¶ 29.)

### Grisales Loan #XXXXX1461

After purchasing the Grisales Loan from Just Mortgage, CitiMortgage discovered that the Grisales Loan was funded by excessive seller contributions in violation of applicable guidelines.  (Id. at ¶ 30.) Because of the excessive seller contributions, the loan-to-value ratio exceeded applicable guidelines.  (Id. at ¶ 31.)

CitiMortgage was required to repurchase the Grisales loan from Fannie Mae.  (Id. at ¶ 32.)

### Kwon Loan #XXXXX8730

After purchasing the Kwon Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's income.  (Id. at ¶ 33.)  CitiMortgage also discovered that the loan application package for the Kwon Loan misrepresented the borrower's employment.  (Id. at ¶ 34.)  Because the amount and source of the borrower's income was misrepresented, the debt-to-income ratio for the Kwon Loan could not be calculated in accordance with applicable guidelines.  (Id. at ¶ 35.)

### Mahinan Loan #XXXXX7120

After purchasing the Mahinan Loan from Just Mortgage, CitiMortgage discovered that the Mahinan Loan was funded by excessive seller contributions in violation of the applicable guidelines.  (Id. at ¶ 36.)

CitiMortgage was required to repurchase the Mahinan Loan from Fannie Mae.  (Id. at ¶ 37.)

### Nieto Loan #XXXXX6392

After purchasing the Nieto Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's income.  (Id. at ¶ 38.)  After including the correct income,

- 13 -

the debt-to-income ratio for the Nieto Loan exceeded applicable underwriting guidelines. (Id. at ¶ 39.)

### Rajikumar Loan #XXXXX4551

After purchasing the Rajkumar Loan from Just Mortgage, CitiMortgage discovered that the loan application package misrepresented the borrower's debts and obligations by failing to disclose two additional mortgages that opened prior to the subject loan. (Id. at ¶ 40.) After including the correct income, the debt-to-income ratio exceeded applicable guidelines. (Id. at ¶ 41.)

### Rodriguez Loan #XXXXX9728

After purchasing the Rodriguez Loan from Just Mortgage, CitiMortgage discovered that there was identity fraud in connection with the loan application package. (Id. at ¶ 42.)

CitiMortgage was required to repurchase the Rodriguez Loan from Fannie Mae. (Id. at ¶ 43.)

### Shin Loan #XXXXX6205

After purchasing the Shin Loan from Just Mortgage, CitiMortgage discovered that the mortgage insurance obtained was insufficient under applicable guidelines. (Id. at ¶ 44.)

CitiMortgage was required to repurchase the Shin Loan from Fannie Mae. (Id. at ¶ 45.)

### Form 1003

Each of the Group 3 Loans had a corresponding Form 1003. (Doc. 193 at ¶ 52; Doc. 193-11.)

### CitiMortgage's Demands for Cure or Repurchase

CitiMortgage found that the inaccuracies, misrepresentations, and other defects in the Group 3 Loans were defects material to the origination and underwriting decisions for each of the Group 3 Loans. (Doc. 193 at ¶ 46.) Failure to disclose the borrower's liabilities and to ensure that the borrower's loan complies with the Agreement renders

- 14 -

the borrower's debt-to-income ratio inaccurate and misleading to CitiMortgage.  (Id. at ¶¶ 47-48.)  This impairs CitiMortgage's ability to assess accurately the risks associated with loans, including the ability to collect payments from the borrower.  (Id.)  Absent being required to do so, CitiMortgage would not have repurchased the Group 3 Loans from Fannie Mae, Freddie Mac, or other investors.  (Id. at ¶ 48.)  Just Mortgage's promises and warranties under the Agreement that these defects were not present, and its promise to cure or repurchase any loan where such defects were present, were material to CitiMortgage's decision to purchase the Group 3 Loans from Just Mortgage.  (Id. at ¶ 49.)

Based on the information obtained by CitiMortgage concerning the inaccuracies, misrepresentations, and other defects in the Group 3 Loans, CitiMortgage, in its sole and exclusive discretion, determined that the Group 3 Loans were underwritten and/or originated based on materially inaccurate information, material misrepresentations, or were otherwise in violation of the Agreement.  (Id. at ¶ 53.)

CitiMortgage sent written notices to Just Mortgage advising of the defects in the Group 3 Loans and demanding that Just Mortgage cure the defects or repurchase the Group 3 Loans pursuant to the Agreement (Group 3 Demand Letters).  (Id. at ¶ 54; Doc. 193-12.)  CitiMortgage either is the current holder of the Group 3 Loans or was the holder at the time it demanded repurchase of the Group 3 Loans and exercised its rights under § 11 of the Agreement.  (Doc. 193 at ¶ 28.)  Just Mortgage failed to cure the defects in the Group 3 Loans or to repurchase the Group 3 Loans in response to CitiMortgage's Group 3 Demand Letters.  (Id. at ¶ 56.)

As a result, CitiMortgage issued final notices to Just Mortgage demanding that Just Mortgage repurchase the Group 3 Loans (Group 3 Loans Repurchase Letters).  (Id. at ¶ 57; Doc. 193-13.)  To date, Just Mortgage has not repurchased any of the Group 3 Loans.  (Doc. 193 at ¶ 59.)

Repurchase Price

Based on the application of the Repurchase Price formula found in the CMI Manual,[14] the amounts due to CitiMortgage from Just Mortgage, if Just Mortgage was obligated to repurchase the Group 3 Loans,[15] would be:

| | |
|---|---|
| Grisales Loan: | $346,334.10 |
| Kwon Loan: | $284,792.65 |
| Mahinan Loan: | $221,679.26 |
| Nieto Loan: | $240,030.32 |
| Rejkumar Loan: | $315,719.13 |
| Rodriguez Loan: | $114,410.01 |
| Shin Loan: | $341,888.20 |
| TOTAL: | $1,864,853.67[16] |

(Id. at ¶¶ 62-69.)

**IV.   MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1150 (8th Cir. 2012). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Ashanti, 666 F.3d at 1150.  A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party.  Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

_____

[14]As noted above, additional information concerning the Repurchase Price formula found in the CMI Manual is set forth in the court's March 29 Order.  See (Doc. 187 at 17.)

[15]As with the Group 1 and Group 2 Loans, Just Mortgage disputes only that it is not required to repurchase the Group 3 Loans; Just Mortgage does not challenge the amounts of the Repurchase Prices derived from CitiMortgage's application of the Repurchase Price formula to the Group 3 Loans.  (Doc. 199 at ¶¶ 62-69.)

[16]CitiMortgage states in its statement of undisputed facts that the sum of the Group 3 Loan repurchase prices is $1,864,853.66.  (Doc. 193 at ¶ 69.)  However, based on the undisputed Group 3 Loan repurchase amounts, CitiMortgage's calculation is one cent short.

- 16 -

Initially, the moving party must demonstrate the absence of an issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact.  Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co. v. Stone, No. 1:09 CV 1 SNLJ, 2010 WL 330328, at *2 (E.D. Mo. Jan. 21, 2010).

## V.  DISCUSSION

As stated in the court's March 29 Order, Missouri law governs the Agreement.  (Doc. 187 at 19.)   Under Missouri law, a plaintiff must establish four elements to prevail on a breach of contract claim: (1) the existence of a valid contract; (2) the defendant's obligation under the contract; (3) a breach by the defendant of that obligation; and (4) resulting damages.  C-H Bldg. Assocs., LLC v. Duffey, 309 S.W.3d 897, 899 (Mo. Ct. App. 2010).

As to the Group 2 and Group 3 Loans, as was with the Group 1 Loans, Just Mortgage does not dispute: (a) the existence of a valid contract with CitiMortgage, namely, the Agreement, which sets forth the terms and conditions governing the sale of mortgage loans by Just Mortgage to CitiMortgage under the Program; (b) that under the Agreement, CitiMortgage had the ability to "exercise its sole and exclusive discretion" to determine whether the Group 2 and Group 3 Loans were defective; (c) that, for one or more reasons, each of the Group 2 and Group 3 Loans was defective; or (d) CitiMortgage's damages calculations.

Instead, as with the Group 1 Loans, Just Mortgage argues that certain affirmative defenses shield it from liability.  See (Doc. 187 at 20-28.)  Specifically, Just Mortgage reasserts its arguments that:

(a)    Sections 2(i), 10, 11(ii), and 2202 of the Agreement are ambiguous and conflicting regarding Just Mortgage's duties and liabilities with respect to misrepresentations, misstatements, and omissions

made by loan applicants, appraisers, escrow agents, title companies, closers, and credit reporting agencies;[17]

(b)  CitiMortgage failed to act in good faith in exercising its sole and exclusive discretion to demand cure or repurchase of the Group 2 and Group 3 Loans, thus violating the implied covenant of good faith and fair dealing, in that CitiMortgage knew that its guidelines, with which Just Mortgage was required to comply, would result in defective loans, yet CitiMortgage did not notify Just Mortgage of this problem;[18]

(c)  the terms of the Agreement are unconscionable and should not be enforced; and

(d)  it made a unilateral mistake of fact, in that it mistakenly believed that if it complied solely with § 2(i), then CitiMortgage would not be able to demand cure or repurchase of the loans based on loan applicants' misrepresentations.

(Docs. 175, 198.)

In the March 29 Order, the court addressed each of these arguments in the context of the Group 1 Loans and held that these arguments were without merit. (Doc. 187 at 20-28.)

Just Mortgage has not presented any new argument or additional evidence that would alter the court's March 29 legal conclusions or that would distinguish treatment of the Group 2 and Group 3 Loans from the Group 1 Loans.[19]  Thus, the court adopts and reincorporates the legal

---

[17]As framed more succinctly in the court's March 29 Order, Just Mortgage argues "that § 2(i) and § 2202 state that Just Mortgage is not liable so long as it did not have reason to believe a misrepresentation existed, while § 11(ii) states that Just Mortgage is liable regardless of Just Mortgage's lack of any prior knowledge of a misrepresentation." (Doc. 187 at 21-22.)  As noted below, § 10 merely states the remedies available for a breach of § 2(i). (Id. at 22, n.20.)

[18]As with the Group 1 Loans, Just Mortgage does not argue, regarding the Group 2 and Group 3 Loans, that CitiMortgage acted in bad faith because these loans were not actually defective. See (Doc. 187 at 25 (citing Citimortgage, Inc. v. OCM Bancorp, Inc., No. 4:10 CV 467 CDP, 2011 WL 1594950, at *1 (E.D. Mo. Apr. 27, 2011) (noting that the correspondent could establish bad faith "by presenting sufficient evidence of no defects at all in the six loans")).

[19]In its response memorandum opposing CitiMortgage's motion for summary judgment as to the Group 3 Loans, Just Mortgage raises the same argument as to ambiguity and conflict, except that it adds that § 10 of the Agreement compounds the ambiguity of §§ 2(i), 11(ii), and 2202. Just
(continued...)

analysis set forth in its March 29 Order and rejects Just Mortgage's reassertion of these arguments as to the Group 2 and Group 3 Loans.

Moreover, as set forth below, Just Mortgage do not dispute that CitiMortgage was entitled to demand cure or repurchase of each of the Group 2 and Group 3 Loans under at least one[20] subsection of § 11, independent of § 11(ii).[21]

As to the Alraqeeb and Calvillo Loans, the mortgage insurance, which was required to be maintained under the terms of the Agreement, was rescinded.  (Doc. 166 at ¶¶ 33, 41.)  Thus, CitiMortgage's demand that Just Mortgage cure or repurchase these loans was proper under § 11(i).

---

[19](...continued)
Mortgage has not identified how § 10 amplifies any such ambiguity. Regardless, in its March 29 Order, the court explained:

> The remedies available for breach of § 2(i) also differ from those available for a breach of § 11(ii).  Remedies for a breach of § 2(i) are set forth in § 10, while the available remedies for a breach of § 11(ii) are CitiMortgage's ability to demand that the correspondent cure or repurchase the defective loan and any other such remedies as CitiMortgage deems appropriate.

(Doc. 187 at 22 n.20.)
The court rejects Just Mortgage's argument that §§ 2(i), 10, 11(ii), and 2202, when read together, are ambiguous and conflicting.

[20]The court does not exhaustively discuss all possible subsections of § 11 applicable to each of the subject loans, but notes that each of the subject loans was subject to demand or cure pursuant to at least one other subsection of § 11.

[21]As stated in the court's March 29 Order, because CitiMortgage's cure or repurchase demands were authorized by subsections of § 11 other than (ii), CitiMortgage's demands were proper regardless of whether § 11(ii) is ambiguous or conflicting.  See (Doc. 187 at 23–24.)
Regardless, as the court did in its March 29 Order, the court again holds that § 11(ii) neither conflicts with, nor creates an ambiguity when read with, other provisions of the Agreement, namely, §§ 2(i), 10, and 2202; CitiMortgage's demands were also authorized under § 11(ii).

- 19 -

As to the Amaya, Calvillo, Corona, Latief, Owen, Kwon, Nieto,[22] and Rajikumar Loans, the misrepresentations made concerning the borrower's income caused the debt-to-income ratios to exceed the applicable underwriting guidelines.  (Doc. 166 at ¶¶ 36, 39, 45, 55, 60; Doc. 193 at ¶¶ 35, 39, 41.)  Thus, CitiMortgage's demand that Just Mortgage cure or repurchase these loans was authorized under § 11(i).

CitiMortgage was required to repurchase the Amaya, Calvillo, Castro, Corona, De La Rosa, Gutierrez, Hernandez, Latief, Owen, Grisales, Mahinan,[23] Rodriguez, and Shin Loans from either Freddie Mac or Fannie Mae.  (Doc. 166 at ¶¶ 37, 42, 43, 46, 49, 51, 53, 58, 61; Doc. 193 at ¶¶ 31, 37, 43, 45.)  Thus, CitiMortgage's demand that Just Mortgage cure or repurchase these loans was authorized by § 11(iv).

As stated above, for the reasons set forth in the court's March 29 Order, Just Mortgage's asserted affirmative defenses are without merit. To the extent Just Mortgage raises challenges to the court's March 29 Order, these challenges remain without merit.[24]

As discussed above, CitiMortgage has met its prima facie burden as to each of the Group 2 and Group 3 Loans, namely, that it was entitled to demand cure or repurchase of each of the Group 2 and Group 3 Loans under various provisions of the Agreement.  Because Just Mortgage's

[22]The court is not persuaded that a material dispute exists regarding the Nieto Loan.  Disputes exist concerning repurchase requirements and the adequacy of the documentation accompanying the loan application package; no dispute exists that the debt-to-income ratio exceeded the applicable underwriting guidelines.  (Doc. 193 at ¶ 39.)  Thus, as noted above, CitiMortgage's demand was authorized by § 11(i).

[23]The court is not persuaded that a material dispute exists regarding the Mahian Loan.  See (Doc. 198 at 11-12; Doc. 206 at 4 n.2.)  Just Mortgage's does not dispute that it was required to repurchase the Mahian Loan by Fannie Mae.  (Doc. 193 at ¶ 37.)  Thus, as noted above, CitiMortgage's demand was authorized by § 11(iv).

[24]For example, Just Mortgage argues that it was not required to plead unconscionability as an affirmative defense and that the court did not consider the circumstances at the time of contract formation in evaluating its unconscionability argument.  The court has considered these arguments and for the reasons set forth in its March 29 Order, holds that they are without merit.  See (Doc. 187 at 26-28.)

- 20 -

asserted affirmative defenses fail, CitiMortgage is entitled to summary judgment on the Group 2 and Group 3 Loans.

## VI. CONCLUSION

Therefore,

**IT IS HEREBY ORDERED** that the motion of plaintiff CitiMortgage, Inc. for summary judgment as to the Group 2 Loans (Doc. 164) is sustained.

**IT IS FURTHER ORDERED** that the motion of plaintiff CitiMortgage, Inc. for summary judgment as to the Group 3 Loans (Doc. 191) is sustained.

**IT IS FURTHER ORDERED** that in light of the court sustaining plaintiff CitiMortgage, Inc.'s motions for summary judgment on the Group 1, 2, and 3 Loans, a hearing on plaintiff's entitlement to further relief sought in the complaint, namely, costs, attorney's fees, pre-judgment interest, post-judgment interest, and an order compelling Just Mortgage to repurchase the twenty-seven loans at issue, will be held on **Monday, October 1, 2012 at 10:00 a.m.** in the courtroom of the undersigned.


                                        /S/   David D. Noce
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed on August 3, 2012.