```
 1            IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION
 2

 3

 4    CITIMORTGAGE, INC.,              )
                                       )
 5              PLAINTIFF,             )
                                       )
 6                                     )
                       vs.             ) No. 4:09-CV-1909-DDN
 7                                     )
      JUST MORTGAGE, INC.,             )
 8                                     )
                DEFENDANT.             )
 9                                     )
      ---------------------------------
10

11

12

13           BEFORE THE HONORABLE DAVID D. NOCE
                  UNITED STATES MAGISTRATE
14                   MOTION TO COMPEL
                    DECEMBER 13, 2011
15

16

17

18

19

20

21

22    COURT REPORTER:     GARY BOND, RMR, RPR
                          THOMAS F. EAGLETON COURTHOUSE
23                        111 S. TENTH STREET, THIRD FLOOR
                          ST. LOUIS, MISSOURI 63102
24                        314.244.7980

25
```

                              APPEARANCES



FOR THE PLAINTIFF:

                    BRYAN CAVE, LLP
                    BY:  KETRINA BAKEWELL, ESQ.
                    LOUIS BONACORSI, ESQ.
                    211 N. BROADWAY, SUITE 3600
                    ST. LOUIS, MISSOURI  63102
                    314.436.2824
                    KGBAKEWELL@BRYANCAVE.COM


FOR THE DEFENDANT:

                    YEROUSHALMI & ASSOCIATES
                    BY:  PETER SATO, III, ESQ.
                    9100 WILSHIRE BOULEVARD, SUITE 610E
                    BEVERLY HILLS, CALIFORNIA  90212
                    314.623.1926
                    PETER@YEROUSHALMI.COM

ST. LOUIS, MISSOURI; DECEMBER 13, 2011

2:00 p.m

THE COURT: All right. In this case of CitiMortgage, Incorporated, v. Just Mortgage, Incorporated, Case Number 4:09-CV-1909. The matter is before the Court this afternoon for the presentation on a couple of pending motions. Primarily, the defendant's Motion to Compel Discovery.

Participating here in the courtroom are attorneys Ketrina Bakewell and Louis Bonacorsi and participating by conference telephone call is attorney Peter Sato participating from California. Can you hear me, Mr. Sato?

MR. SATO: I can hear you fine, Your Honor.

THE COURT: All right. Thank you. I'm pretty much -- I think -- going to just jump to the Motion to Compel. I think I can do that. I did consider the arrangements pro and con; the Motion for an Extension of Time to File the Motion; and then the Motion to Strike; and then the motion itself. And I think I just want to get right to the Motion to Compel. So let's see someone on behalf of the plaintiff up at the podium, please? Miss Bakewell will be up there.

And I think there are only a couple of matters to be dealt with, and I may be incorrect on that. But looking at Interrogatory Number 4 -- and if I overlook something, I will

1  apologize -- I think the argument has to do with the
2  plaintiff telling the defendant what sections of the CM
3  Manual the plaintiff alleges the defendant didn't comply
4  with.  And is that a fair statement?  Let me ask you, Mr.
5  Sato:  Was there anything else with respect to that
6  interrogatory that needs to be argued about?
7           MR. SATO:  No, Your Honor.  That is an accurate
8  representation of our argument.
9           THE COURT:  Okay.
10          MS. BAKEWELL:  And, Your Honor, we would disagree.
11 That's not the interrogatory at all.  And I just have a copy.
12 I don't know if you have it handy?
13          THE COURT:  I have it.
14          MS. BAKEWELL:  And it's something that I've spoken
15 with Mr. Sato about.  The actual reissued interrogatory says,
16 "Please state the exact provision and quoted language from
17 the agreement which refers or relates to each obligation
18 under the agreement which, in your discretion, you contend
19 JMI breached as to the Group One loans."  We answered that
20 the interrogatory fully, Your Honor.
21          And what we did was identify Section 11 of the
22 agreement, which is the provision we claim was breached in
23 this case.  We're not making a claim in this case for breach
24 of any particular provision of the manual or any other
25 provisions of the agreement.  Our claim in this case -- and I

1  think Mr. Sato knows this and I've explained it to him -- is
2  that the contract was breached.
3       And if you look back at the language of the
4  agreement, we're answering exactly what was asked:  "What is
5  the provision and quoted language from the agreement which
6  relates to the obligation under the agreement" we claim was
7  breached?  We claim that Section 11 of the agreement was
8  breached when a demand for repurchase or cure of particular
9  loans was made and then the defendant failed to cure or
10 repurchase those loans.
11      THE COURT:  What about the incorporation of the
12 manual into the agreement?
13      MS. BAKEWELL:  Simply to give an overview of the
14 four corners of the agreement, the agreement first paragraph
15 incorporates by reference the manual.  But in our breach of
16 contract claim, we're not claiming breach of any particular
17 provision of the manual.  Our claim of breach relates to
18 failure to repurchase or cure.  I mean, basically, we see it
19 as we couldn't have answered that particular interrogatory in
20 any other way, given the claim of the case.
21      THE COURT:  Well, in the development of the case of
22 the presentation by the plaintiff, then, are you saying that
23 the plaintiff isn't going to ultimately come down to an
24 argument that the defendant breached the agreement because it
25 didn't follow these sections of the manual?

1    MS. BAKEWELL:  That's my understanding, Your Honor.
2    The breach of the contract is the failure to repurchase the
3    loans.
4    THE COURT:  Now, I want to be clear:  We're not
5    going to be seeing any briefing or citations to portions of
6    the manual that the defendant did not comply with?
7    MS. BAKEWELL:  Well, the defense in what the
8    defendant has asked about --
9    THE COURT:  You're not answering my question.  As we
10   look at the development of the case in the future, are you
11   telling me that the plaintiff is not going to be saying to
12   the Court, "The defendant failed to comply with its
13   obligations because it didn't comply"?  I am now talking
14   about any some time between now --
15   MS. BAKEWELL:  I think I understand, Your Honor.
16   THE COURT:  Okay.
17   MS. BAKEWELL:  And my understanding would be that is
18   correct.  In terms of breach of the agreement -- the contract
19   that's at issue here -- we're not claiming there is breach of
20   any provision of that agreement in this case, other than
21   Paragraph 11.
22   THE COURT:  And you're not going to be pointing to a
23   portion of the manual that the defendant did not comply with?
24   MS. BAKEWELL:  Well, Your Honor, just let me
25   explain:  In terms of the defects that caused the repurchase

1  demands to be issued in the first place, such as there was a,
2  you know, misrepresentation of income or something didn't
3  meet certain guidelines, those come into play in terms of
4  having made the repurchase demand in the first instance. But
5  had the defendant repurchased --
6         THE COURT: No. Then you're getting to the crux of
7  what I'm getting at. So you're saying that, in the future,
8  you may be pointing to the manual and highlighting portions
9  or subsections -- whatever -- that the defendant did not
10 comply with?
11        MS. BAKEWELL: But not in terms of breaching the
12 contract.
13        THE COURT: Okay. Then I'm going to grant the
14 Motion to Compel. That's exactly what I was getting to, and
15 I don't want to be stuck down the line with this argument now
16 on December 13 when we're going back and saying, "Well, we
17 never said that we weren't going to point out any portions of
18 the manual."
19        MS. BAKEWELL: Right. And, Your Honor, I'm fine
20 with that. I just wanted to make clear that, with the
21 question that was asked, we answered that in terms of
22 identifying the portion of the agreement that we believe was
23 breached.
24        THE COURT: I understand. Okay. Thank you. Well,
25 as I understand it, next, we have Requests for Production of

1   documents -- Set one, Number 36 -- having to do with serving
2   of loans.  And I guess the question for Mr. Sato is:  Do you
3   want to tell me how that is relevant?
4           MR. SATO:  Yes, Your Honor.  As to the policies and
5   procedures for the servicing of loans, we believe that is
6   relevant to the mitigation of damages and also the certain
7   circumstances that may have given rise to the demands for the
8   repurchase.  You know, depending on whether Citi followed
9   their own policies and procedures and making sure that these
10  loans were being made to that date or perhaps there is
11  polices and procedures for, you know, other measures which
12  would prevent default by certain borrowers, to that extent,
13  we would want to evaluate those policies and procedures and
14  see if they were followed properly.
15          Because certain of the loans, as far as a reason for
16  demanding repurchase, were that the borrower defaulted or
17  there was some issue with repayment.  And if that is going to
18  be used as a basis for demanding repurchase, then we should
19  be able to evaluate whether the servicing was done properly.
20          THE COURT:  Okay.  Do you have a response?
21          MS. BAKEWELL:  I do, Your Honor.  And the particular
22  request asked for policies and procedures -- basically,
23  CitiMortgage's internal policies related to servicing loans.
24  We don't believe that is relevant to anything in the case.
25  Because however we serviced loans, doesn't give rise to any

1  claim by the defendant.  And, actually, the parameters of
2  what the damages are in the case are set forth in the
3  contract.  In the manual, it gives an explicit formula that's
4  to be used in calculating the damages.  But I would go a step
5  further and say that how these loans were serviced -- you
6  know, was there a default?  What did you do?  Did you try to
7  collect?  What was other activities?  Was there a
8  foreclosure? -- none of that for the particular loans in this
9  case is going to be found in the procedures.
10              And based upon the Court's prior orders having to do
11 with, you know, what really relates to the loans in this case
12 versus what is fishing for general information, we don't
13 believe that asking for the servicing procedures fits within
14 the parameters what that Court has given.  And I would also
15 note that servicing records -- the precise servicing records
16 and I brought a copy if the Court is interested in seeing
17 this.  It has been produced -- we've produced volumes of the
18 servicing records on each particular loan to the defendant in
19 the case, which really gives sort of the full background from
20 the time we first got the loan until either today or if it
21 was disposed of.
22              Did it go into default?  What happened if it did go
23 into default?  It gives the actual facts of what happened in
24 the handling and the servicing of each one of those loans.
25 And discussions with opposing counsel about, "Well, all

1  right.  We've given you this.  We've produced the manual and
2  the guidelines related to the manual, which also addresses
3  servicing, what is the relevance of asking now for -- on top
4  of all of that information -- asking for the internal
5  procedures on how CitiMortgage services any loans?"
6          And the answer was, "Well, we think it might lead us
7  to be able to find that you didn't do something under your
8  own procedures that you should have."  But, Your Honor, I
9  think that's pretty fair afield.  That really is fishing, and
10 it is not in keeping with the closer parameters relating to
11 the loans that the Court has set down.
12         THE COURT:  Okay. Thank you.  Mr. Sato, do you have
13 any reply to what Ms. Bakewell has said?
14         MR. SATO:  Yes.  Just briefly, Your Honor.  I would
15 also say that whether CitiMortgage followed their own
16 policies and procedures and to what extent they did not is
17 also relevant to whether they acted in good faith in carrying
18 out the purposes of this contract.
19         For example, one of the reasons for demanding
20 repurchase is really paying the default, which is a type of
21 failure to pay on behalf of the borrowers.  If there is some
22 issue with, you know, following the policies not being done
23 in the proper manner or lack of good faith, then, that would
24 defeat the covenant of good faith and fair dealing.
25         And also as far as the servicing records that were

1 produced, they do give a history of the servicing but doesn't
2 explain the procedures that Citi would be obligated to follow
3 to make sure that they are servicing the loan properly and
4 would really go to what we're trying to evaluate in this
5 question.
6     THE COURT: Okay. I'm persuaded that the request
7 for that information is not relevant. The defendant has
8 servicing records -- factual records -- which can be
9 submitted perhaps to an expert. But, otherwise, this area, I
10 don't see the relevance of it.
11     All right. I think we're talking about something
12 called the "Sharepoint documents"?
13     MS. BAKEWELL: And if I could, Your Honor? In the
14 course of the corporate designee's deposition that the
15 defendant's took of one of the CitiMortgage employees, he was
16 asked about various places where you could find policies and
17 procedures.
18     He mentioned the Sharepoint database where some
19 policies and procedures are housed. And so in the lead-up to
20 the Motion to Compel, we received a letter from opposing
21 counsel where it appeared, although they didn't identify any
22 particular document request that called for this, it appeared
23 that they were asking for policies and procedures related to
24 how CitiMortgage makes a determination of whether or not to
25 seek repurchase of a loan.

1         So in the phone call that I had with Mr. Sato, I
2   said, "Is that what you're looking for?"  And he said, "We're
3   looking for that, and we're looking for policies and
4   procedures that would have applied to any demand for
5   repurchase that Citi got from an investor."  And I said,
6   "Well, on the first item, I'm not aware of a particular
7   document request that applies," and he really couldn't point
8   me to one at that time.
9         But I said, "You know what?  Let me check and see if
10  there are such available procedures and if we can provide
11  them to you."  And I was in the process of checking.  But the
12  very next day, we got served with the Motion to Compel.  So
13  that didn't give me very much time to try to resolve that
14  issue.  But I will say that when it comes to the policies and
15  procedures related to CitiMortgage's determination of whether
16  to seek repurchase, we're agreeable to providing those.  And
17  had the defendant not jumped the gun and filed the motion, I
18  would have been able to advise him of that with a few days.
19        The second part of it -- and I don't even know in
20  they're still seeking this -- but apparently they were
21  claiming that they also wanted internal policies and
22  procedures of CitiMortgage related to demands that the
23  company gets from investors for repurchase of loans.  So if
24  Fannie or Freddie would make a demand upon CitiMortgage, as I
25  understand it, they are also seeking those policies and

1  procedures.
2           And, Your Honor, we think those are irrelevant and
3  far afield from anything that is pertinent to this case and
4  also not consistent with the rulings that the Court has made
5  on prior discovery issues where you have not allowed inquiry
6  into the development of guideline procedures.  You've also
7  ruled that discovery related to third parties, unless it
8  specifically pertains to the demands for repurchase of the
9  loans at issue, are not fair game.
10          And I believe some of our papers mention a recent
11 order by Judge Sippel that's very consistent and kind of
12 follows from some of this Court's prior rulings saying that
13 the scope of discovery should pertain to the determination of
14 whether or not there were defects in the exercise of
15 discretion in making a demand upon the defendant; not
16 whatever might have related to other parties including
17 investors.
18          THE COURT:  Okay.  Mr. Sato, do you have a reply to
19 what Ms. Bakewell has said?
20          MR. SATO:  Yes, Your Honor.  As to the policies and
21 procedures for responding to third-party demands, we are
22 trying to evaluate the reason for many of the repurchase
23 demands which is that either Fannie Mae or Freddie Mac
24 demanded a repurchase of the loan and then CitiMortgage would
25 turn around and demand a repurchase from our client.

1    We would want to know whether there are procedures
2    or guidelines that CitiMortgage would be required to follow
3    to respond to those types of repurchase demands to either
4    cure them or to act in good faith and basically to, you know,
5    comply with those either repurchase demands or cure them,
6    just as Just Mortgage would have to as to CitiMortgage under
7    that contract.  And as far as using it as a basis for
8    demanding repurchase, we would want to know that they made
9    that determination or evaluation in good faith.  And we
10   should see those policies and procedures to determine if that
11   was done.
12        THE COURT:  So it seemed to me that the discussion
13   dealt with two groups of items:  One having to do with
14   procedures regarding demands by third-party investors on Citi
15   to resell or repurchase or whatever?
16        MS. BAKEWELL:  That's the second part, Your Honor.
17   The first part are procedures related to our own
18   determinations whether to make a demand upon Just Mortgage.
19   We're willing to provide those.  That's in the process.  It's
20   the second piece that it just seems highly speculative.
21        And I'll mention, Your Honor, that, in terms of each
22   individual loan, if there was a demand to CitiMortgage from
23   an investor like Fannie or Freddie.  And we had any
24   correspondence back and forth with them if there was a
25   determination that, "All right.  We will repurchase the loan

1  from that investor," we've produced all the documents related
2  to that.
3       What the defendant is asking for here is something
4  else. It is highly speculative: "Well, we think if we could
5  see your procedures about how you are going to respond to
6  Fannie or Freddie, maybe we could find out if you did it the
7  right way. Maybe we can find something that to suggest that,
8  you know, you didn't follow your own procedures." And that's
9  the point, Your Honor, where we believe it's highly
10 speculative. It's irrelevant, and it is not in keeping with
11 the scope of discovery that this Court and also Judge Sippel
12 has ordered in these cases.
13      THE COURT: All right. With respect to the
14 materials that you said you would provide voluntarily, I will
15 order you to do that. I'm going to find that the other group
16 is irrelevant; that it seems to me that the defendant is
17 arguing a lack of a good faith and fair dealing in violation
18 of the inherent provision of the agreement between the
19 plaintiff and the defendant violated by reason of the
20 asserted compliance by the plaintiff with somebody else's
21 contract that it may have had with somebody else.
22      And I don't see the relevance of the two. The
23 relationship, I mean. There may be something involved, but I
24 don't know that the defendant has a horse in that race as far
25 as a substantial interest in enforcing somebody else's

1  contract as opposed to being sure that it's getting the
2  benefit of its agreement either impliedly or expressly.  So
3  to that extent, I will grant the Motion to Compel what they
4  said they would provide voluntarily, and I'll deny the
5  balance.
6          Let me ask you, Mr. Sato:  Is there anything else
7  that's is the subject of Motion to Compel?
8          MR. SATO:  No, Your Honor.  I believe that covers
9  all the topics.
10         THE COURT:  Okay.  Is there anything else on behalf
11 of the plaintiff to take up in court this morning, since
12 we're all on the record?
13         MS. BAKEWELL:  Well, Your Honor, we filed our papers
14 opposing -- and I believe you know -- but we've gotten right
15 to the Motion to Compel but opposing the defendant's further
16 Motion for Extension of Time to file a Motion to Dismiss and
17 also moving to strike the Motion to Compel that they filed.
18 And I think those papers are self-evident.  But, mostly, we
19 wanted to make sure that they're seeking extra time.  And if
20 they're getting further extensions, it's very important to
21 our client to hold the line on the summary judgment dates and
22 on the summary judgment filing deadlines that are in place
23 that have been extending a number of times.
24         THE COURT:  Well, as I understand it, the Motion for
25 an Extension of Time to file a Motion to Compel is now moot,

1  since we've now dealt with the Motion to Compel.  The Motion
2  to Strike the Motion to Compel is now moot, since we've dealt
3  with the Motion to Compel.  So I don't see that issue.  And
4  I'm not inclined to grant any extensions on the pending
5  motion or the pending deadlines.  I think there is a
6  January 24th hearing date on the Motion for Summary
7  Judgment.  And I think that the defendant has until January 3
8  or 4 to file a response to the Motion for Summary Judgment, I
9  think.
10             MS. BAKEWELL:  That's my understanding, Your Honor.
11             THE COURT:  Right.  Okay.  All right.  Mr. Sato, is
12  there anything else to be taken up?  Can you think of
13  anything else since, we're all here on the record?
14             MR. SATO:  Yes, Your Honor.  If I could request that
15  the further responses be produced by December 20th, and
16  that would give us a reasonable amount of time also
17  considering not holidays in order to incorporate any
18  responses into the pending opposition to the Motion for
19  Summary Judgment, which is due January 3rd.
20             THE COURT:  All right.  December 20?
21             MS. BAKEWELL:  I think we should be able to do that,
22  Your Honor .
23             THE COURT:  That's a week from today.  All right.  I
24  will so order that.  All right.  Thank you all very much.
25             MS. BAKEWELL:  Thank you.

1       MR. SATO:   Thank you, Your Honor.

2       THE COURT:   You're welcome.   We're in recess.

3           (Proceedings concluded at 2:24 p.m.)

4

5                    *     *     *

**UNITED STATES OF AMERICA** )
) ss:
**EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION** )

### C E R T I F I C A T E

I, Gary Bond, Certified Shorthand Reporter in and for the United States District Court for the Eastern District of Missouri, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 13th day of December, 2011, in the above mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys in this action, nor financially interested in the action.

I further certify that this transcript contains pages 1 through 18 and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

IN WITNESS WHEREOF, I have hereunto set my hand at St. Louis, Missouri, this 14th day August, 2012.

/s/ Gary Bond
Gary Bond, RPR, RMR
Certified Shorthand Reporter