## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09 CV 1909 DDN |
| | ) | |
| JUST MORTGAGE, INC., CHANG HWAN | ) | |
| CHOI, EUN H. CHOI, | ) | |
| and RMK FINANCIAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM
## REGARDING PROVISIONAL REMEDIES,
## DISCOVERY, AND AFFIRMATIVE DEFENSES

This action is before the court on the motions of plaintiff CitiMortgage, Inc., for provisional remedies under Mo. Rev. Stat. § 428.039 against defendants Chang Hwan Choi and Eun. H. Choi, to strike defendants' affirmative defenses, and for discovery.  (Docs. 263, 267, 278, 279.)  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Docs. 10, 269.)  The court heard oral argument on October 31, 2013.

## I. BACKGROUND

On November 20, 2009, plaintiff CitiMortgage commenced this action against defendant Just Mortgage, Inc., alleging breach of contract.  (Doc. 1.)  On March 29, 2012, and August 3, 2012, the court granted summary judgment in favor of plaintiff.  (Docs. 187, 211.)  On March 21, 2013, the court entered a final judgment, ordering Just Mortgage to pay $8,806,276.82 in contract damages.  (Doc. 243.)

Following the entry of final judgment, plaintiff filed a supplemental complaint.  (Doc. 252.)  The supplemental complaint adds defendants Chang Hwan Choi, Eun. H. Choi, and RMK Financial, Inc. as parties to the case.  (Id.)  According to the supplemental complaint, the following occurred.  Defendant Chang Hwan Choi has been president of Just Mortgage since

2009 and is its sole owner.  (Id. at ¶ 10.)  Defendant Eun. H. Choi, Chang Hwan Choi's spouse, was president of Just Mortgage before Chang Hwan Choi's presidency and was a stockholder of Just Mortgage until the company ceased operations and distributed its assets.  (Id. at ¶ 11.)

Defendants RMK Financial and Just Mortgage share several characteristics.  (Id. at ¶ 6.) Sang H. Jeung, CEO and owner of RMK Financial, served as the CEO of both RMK Financial and Just Mortgage in 2009 and 2010.  (Id.)  Sang. H. Jeung and his wife owned stock of both companies during this time.  (Id.)  The companies also shared employees and conducted business in adjacent offices within a single building.  (Id.)  Following the close of Just Mortgage's business operations, RMK Financial assumed Just Mortgage's lease and moved into Just Mortgage's former offices.  (Id.)  Further, RMK Financial employs Chang Hwan Choi as a consultant.  (Id.)  The corporations also employed the same accountant.  (Id. at ¶ 39.)

Just Mortgage's business operations ceased in early 2011.  (Id. at ¶ 3.)  When plaintiff attempted to collect judgment, Just Mortgage responded that it had no assets.  (Id.)  Just Mortgage explained that losses in the operation of its mortgage lending business caused the change in the financial condition of the formerly profitable company.  (Id.)  Defendant Chang Hwan Choi destroyed Just Mortgage's financial records subsequent to its closing of business operations, ordering employees to shred paper documents, to delete electronic records, and to dispose of the computers.  (Id. at ¶ 24.)

Plaintiff has obtained some financial records by subpoenas to other parties, including Just Mortgage's accountant and financial lenders.  (Id. at ¶ 4.)  The records reveal that the company continued to earn profits immediately prior to its closing.  (Id. at ¶ 3.)  Specifically, the records include the following.  In 2006, Just Mortgage earned $18,528,194 in profits, paid $14,133,733 to shareholders, and ended the year with a net worth $11,968,517.  (Id. at ¶ 25.)  In 2009, Just Mortgage earned $24,120 in profits and had a net worth of $12,118,827, including $5,970,126 in cash.  (Id. at ¶ 27.)  In 2010, Just Mortgage earned $4,001,087 in profits.  (Id. at ¶ 30.)  Despite distributing $4 million to its shareholders, Just Mortgage ended 2010 with over $14 million in cash and a net worth of over $12 million.  (Id.)  The 2010 financial report indicates several large expenses that either did not appear in the 2009 report or were substantially smaller in the 2009 report.  (Id.)  In January 2011, Just Mortgage earned $1,326,542 in profits and had $16,342,971 in cash and a net worth of $13,446,456.  (Id. at ¶ 31.)

Plaintiff has attempted to track the assets of Just Mortgage.  (Id. at ¶ 21.)  Just Mortgage has provided audited financial reports for the years 2006 through 2009.  (Id. at ¶ 22.)  Just Mortgage, its accountant, and Chang Hwan Choi could not provide financial documents for 2010 and 2011.  (Id. at ¶¶ 22-24.)  During a post-judgment deposition, Chang Hwan Choi testified that he did not remember whether Just Mortgage distributed assets to stockholders in 2010 or 2011 and that he could remember few details regarding the company's finances or closure.  (Id. at ¶ 29.)  Plaintiff also served interrogatories requesting information regarding Just Mortgage's stockholders, transfers, and current assets, and Just Mortgage has not responded.  (Id. at ¶ 32.)  Chang Hwan Choi also testified that he did not know the recordkeeping methods of Just Mortgage for shareholder distributions and could not remember the identity of Just Mortgage's shareholders at the time business operations closed or its tax document preparer.  (Id. at ¶¶ 33, 40-41.)

Plaintiff alleges that that defendant Just Mortgage violated the Uniform Fraudulent Transfer Act by transferring substantially all of its assets as stockholder distributions or by disguising the transfers as expenses to avoid execution of plaintiff's judgment.  (Id. at ¶¶ 42-50.)

Plaintiff also alleges that defendants Chang Hwan Choi, Eun. H. Choi, and RMK Financial, Inc. are liable for Just Mortgage's breach of contract as Just Mortgage's alter ego.  (Id. at ¶¶ 51-56.)

Plaintiff further alleges that RMK Financial is liable for Just Mortgage's breach of contract as Just Mortgage's successor.  (Id. at ¶¶ 57-62.)  In addition to extending Just Mortgage's breach of contract liability to the other defendants, plaintiff seeks to recover the costs, post-judgment interest, punitive damages, and provisional remedies under Mo. Rev. Stat. § 428.039.  (Id. at 13.)

## II. MOTION FOR PROVISIONAL RELIEF

Plaintiff moves for an order awarding provisional relief under Mo. Rev. Stat. § 428.039, including: (1) an order directing defendants Chang Hwan Choi and Eun. H. Choi to not transfer or encumber with liens any cash, securities, or other assets that defendant Just Mortgage transferred to them during the pendency of the breach of contract action against Just Mortgage; (2) an order directing defendants Chang Hwan Choi and Eun. H. Choi to provide an accounting of the over $16 million in cash and nearly $13.5 million in net worth reported on Just Mortgage's

January 2011 balance sheet; and (3) an order directing defendants Chang Hwan Choi and Eun. H. Choi to provide documentation of the transfer of Just Mortgage's assets and to cooperate in the collection of such documents from other sources, including the Internal Revenue Service and the Department of Housing and Urban Development.  (Doc. 263.)

The Uniform Fraudulent Transfer Act (UFTA) defines a fraudulent transfer as a transfer made with the "actual intent to hinder[,] delay, or defraud any creditor of the debtor."  Mo. Rev. Stat. § 428.024.1(1).   The UFTA also enumerates an illustrative list of factors for the determination of actual intent, including whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mo. Rev. Stat. § 428.024.2

The UFTA also provides:

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a

-4-

> reasonably equivalent value in exchange for the transfer or obligation and the
> debtor was insolvent at that time or the debtor became insolvent as a result of the
> transfer or obligation.
>
> 2. A transfer made by a debtor is fraudulent as to a creditor whose claim arose
> before the transfer was made if the transfer was made to an insider for an
> antecedent debt, the debtor was insolvent at that time, and the insider had
> reasonable cause to believe that the debtor was insolvent.

Mo. Rev. Stat. § 428.029.  The UFTA further allows creditors seeking relief under this provision to obtain "An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state."  Mo. Rev. Stat. § 428.039.1(2).  Under Missouri law, "When considering a motion for a preliminary injunction, a court should weigh 'the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.'"  State ex rel. Dir. of Revenue, State of Mo. v. Gabbert, 925 S.W.2d 838, 839 (Mo. 1996).  "A petitioner must make some showing of probability of success on the merits before a preliminary injunction will be issued."  Id.

The court first considers the likelihood of success on the merits on plaintiff's UFTA claim.  Defendants emphasize the lack of evidence indicating fraudulent intent.  However, several factors under Mo. Rev. Stat. § 428.024 lend support to plaintiff's allegations of fraudulent intent.  Defendants informed plaintiff that it had no assets to satisfy plaintiff's judgment, indicating a transfer or transfers of substantially all of its assets.  Further, at the time of the transfer, the underlying suit had commenced and remained unresolved.

Defendants argue that transfers to shareholders were disclosed in its 2010 financial statements and in the tax returns of Chang Hwan Choi and Eun. H. Choi.  Nevertheless, plaintiff obtained the 2010 financial statement only after four months of discovery from a third party, and defendants have not produced tax returns, documents filed with the Department of Housing and Urban Development, or bank account records to plaintiff.  Moreover, plaintiff does not limit the inquiry to shareholder distributions and seeks, among other things, further information regarding certain expenses on the 2010 financial statements.

Just Mortgage also argues that the transfers did not cause insolvency, focusing on the $4,000,000 shareholder distribution, the net worth of $12,119,914 at the end of 2010, and the

$8,806,276.82 judgment.  The UFTA considers a debtor to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  Mo. Rev. Stat. § 428.014.1.  But even assuming that the transfers included only the shareholder distribution and the debt included solely plaintiff's judgment, Just Mortgage would have been insolvent after the shareholder distribution.[1]

Additionally, Missouri courts have recognized, "Fraudulent intent is rarely proven by direct evidence."  Taylor v. Clark, 140 S.W.3d 242, 251 (Mo. Ct. App. 2004).  Further, plaintiff's efforts to seek further evidence has been impeded by allegations that Chang Hwan Choi ordered the destruction of Just Mortgage's records and the refusal to cooperate with efforts to obtain financial records from third parties.  The court concludes that plaintiff is likely to succeed on the merits of its UFTA claim.

Plaintiff alleges that Just Mortgage's assets have been subject to unknown transfers in an effort to evade creditors and that it will suffer irreparable harm due to the increased difficulty caused by any additional transfers.  Defendants respond that plaintiff's argument applies to any creditor seeking enforcement of a judgment.  However, the signs of fraudulent intent described above render additional transfers even more likely than in the typical case.

Defendants also argue that plaintiff's ultimate remedy consists of monetary damages.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).  Moreover, to show lack of irreparable harm, defendants rely on Stockdale v. Stockdale, 2009 WL 2151159 (E.D. Mo. 2009).  Stockdale is distinguishable; in that case, the court declined to find irreparable harm, stating, "There is nothing in the record to evidence that defendant will disavow any obligations adjudged by this Court or hide assets to avoid them, so the Court cannot find plaintiff faces a threat of irreparable harm."  Id.  But, here, plaintiff has a judgment in its favor granting monetary damages, which it has been unable to enforce due to transfers with signs of fraudulent intent.  Assuming the truth of plaintiff's allegations, absent provisional relief, efforts to collect a judgment in plaintiff's favor would likely meet the same fate as plaintiff's efforts to collect the last judgment in its favor.  The

---

[1]  Succinctly, $12,119,914 (net worth prior to transfer) less $4,000,000 (transfer) equals $8,119,914 (remaining assets).  $8,806,276.82 (debt) is greater than $8,119,914 (remaining assets.)

factor of irreparable harm weighs in favor of plaintiff.  See BancorpSouth Bank v. Hall, 2011 WL 529971, *6 (W.D. Mo. 2011); Rodriguez v. Lawns of Distinction, Ltd., 2008 WL 4552973, *1 (E.D. Mo. 2008).

Defendants argue that the balance of the harms factor does not weigh in favor of plaintiff. Plaintiff specifically requests that the court order Chang Hwan Choi and Eun. H. Choi to refrain from transferring assets received from Just Mortgage during the pendency of the underlying action.  Chang Hwan Choi and Eun. H. Choi argue that they cannot trace the assets received from Just Mortgage, and that complying with the order would leave them unable to transfer any assets.  However, although Chang Hwan Choi and Eun. H. Choi maintain that they do not have the necessary records, they have not denied the ability to obtain federal and state tax returns or their personal bank records to assist in ascertaining the amounts they received from Just Mortgage.  Further, Chang Hwan Choi and Eun. H. Choi maintained that distributions from Just Mortgage were properly reported on their tax returns.  (Docs. 266-1, 266-2.)

Chang Hwan Choi and Eun. H. Choi state that the presence of assets in their possession from sources other than Just Mortgage makes tracing the assets received from Just Mortgage impossible.  In such cases, the Eighth Circuit has upheld the application of the lowest intermediate balance rule.[2]  Gen. Elec. Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1059 (8th Cir. 2005); Meyer v. Norwest Bank Iowa, Nat. Ass'n, 112 F.3d 946, 950 (8th Cir. 1997).  The court finds the application of the lowest intermediate balance rule from the date of the issuance of this order to the bank accounts in which defendants deposited the shareholder distributions or other funds from Just Mortgage both feasible and appropriate.

Accordingly, the court sustains plaintiff's request to freeze the assets of Chang Hwan Choi and Eun. H. Choi received from Just Mortgage during the pendency of the underlying action.  The court will reconsider this ruling if defendants secure a bond in the amount of

---

[2] The Supreme Court of Appeals of West Virginia explained the lowest intermediate balance rule as follows: [T]he lowest intermediate balance rule is used when a trustee withdraws money from a commingled fund and subsequently makes additions to that fund.  Under the lowest intermediate balance rule, there exist three alternative scenarios: (1) if the amount on deposit in a commingled fund has at all times equaled or exceeded the amount of the trust, the monies of the trust will be returned in their full amount; (2) if the commingled fund has been depleted entirely, the trust is considered lost; and (3) if the commingled fund has been reduced below the amount of the trust but has not been depleted, the settlor is entitled to the lowest intermediate balance in the account.  State ex rel. Ins. Com'r of State of W. Virginia v. Blue Cross & Blue Shield of W. Virginia, Inc., 638 S.E.2d 144, 158 (W. Va. 2006).

plaintiff's judgment ($8,806,276.82) or if defendants deposit the amount in the registry of the court to be placed into an interest-bearing account.

## III. DISCOVERY MOTIONS

Plaintiff moves to compel interrogatories and deposition testimony from defendants Just Mortgage and Chang Hwan Choi.  (Doc. 273.)  Plaintiff states that it sent interrogatories to Chang Hwan Choi and deposed him on behalf of Just Mortgage but that Chang Hwan Choi failed to respond to the interrogatories and claimed inability to remember during the deposition.  Just Mortgage responds that it has since answered plaintiff's interrogatories and that plaintiff's motion is moot.  (See Doc. 286.)  Plaintiff notes that the answers largely assert the inability to remember or lack of knowledge and that Chang Hwan Choi has made no effort to obtain more informative answers.

Plaintiff argues that Chang Hwan Choi could obtain documents from the Internal Revenue Service, United States Department of Housing and Urban Development, and Fannie Mae and consult former Just Mortgage employees and stockholders.  Plaintiff specifically notes that a document obtained from a warehouse lender identified an individual, Gina Mieir, as Just Mortgage's secretary and vice president.  (Doc. 273-3.)  The document also identifies Julie Park and Diana Morales as Just Mortgage officers.  (Id.)  Plaintiff also informs that Just Mortgage's federal income tax returns identify shareholders who received distributions from Just Mortgage.

Fed. R. Civ. P.  30(b)(6) states that organizations may designate officers for depositions on their behalf and that such designees "must testify about information known or reasonably available to the organization."  Further, Fed. R. Civ. P. 26(g)(1) states that signatures on the discovery responses certify that the signee answered "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry."  Therefore, the Federal Rules of Civil Procedure require Chang Hwan Choi to provide information reasonably available and based on reasonable inquiries.

Accordingly, the court orders Chang Hwan Choi to obtain documents from the Internal Revenue Service, Department of Housing and Urban Development, and Fannie Mae and to make reasonable attempts to consult former Just Mortgage employees and stockholders regarding the questions presented in the interrogatories and listed as deposition questions in plaintiff's motion to compel.  The court further orders Chang Hwan Choi to respond to the interrogatories and

depositions questions addressed in the memorandum in support of this motion, supplementing those responses with information obtained during the course of these additional inquiries and producing all relevant documents.  However, the court declines at this time to grant plaintiff's requests that the court draw an adverse inference that Just Mortgage fraudulently transferred assets or enter default judgment in favor of plaintiff.

Plaintiff further moves for orders authorizing and directing the Internal Revenue Service and United States Department of Housing and Urban Development to produce the financial information of Just Mortgage for the years 2006 through 2012.  (Docs. 278, 279.) Plaintiff states that it issued a subpoena to the Department of Housing and Urban Development for financial information relating to Just Mortgage for the years 2006 through 2012.  Plaintiff further states that Just Mortgage objected on grounds of privilege and relevancy and the department declined to produce the documents in the absence of a court order.  Defendants respond that former shareholders have a right to privacy with such information and that such information bears no relevance to plaintiff's claims.

"Public policy disfavors unnecessary public disclosure of tax records because of the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns."  Schoenbaum v. E.I. Dupont de Nemours and Co., 2009 WL 249099, *1 (E.D. Mo. Feb. 2, 2009).  To compel the disclosure of tax returns, the movant must show that (1) "the returns are relevant to the subject matter of the action" and (2) "there is a compelling need for the tax returns because the information contained therein is not otherwise readily available."  Id.; E-P Int'l Distribution Inc. v. A & A Drug Co., 2009 WL 1442534, *6 (D. Neb. 2009); Hilt v. SFC Inc., 170 F.R.D. 182, 189 (D. Kan. 1997).

Although defendants assume that plaintiff requests Just Mortgage's tax returns solely for a claim of punitive damages, plaintiff seeks to prove fraudulent transfers from Just Mortgage and state that federal income tax returns would show the amount of Just Mortgage's distributions and the identity of the receiving shareholders.  See Internal Revenue Service, S Corporations, http://www.irs.gov/Businesses/Small-Businesses-%26-Self-Employed/S-Corporations      (last visited November 13, 2013).  Moreover, Chang Hwan Choi has admitted lack of knowledge regarding the amount of distributions and shareholder identity and that he ordered employees to destroy the records.  Therefore, the federal income tax are relevant to the subject matter of the action and the information contained therein is not otherwise readily available.  Additionally, a

protective order between CitiMortgage and Just Mortgage remains in force, further addressing defendants' privacy concerns.  (Doc. 26.)  The same rationale applies to plaintiff's requests for financial information from the Department of Housing and Urban Development.

Defendants also object on the basis that plaintiff's request is overbroad, citing plaintiff's request for seven years of financial documents from 2006 to 2012.  Plaintiff alleges that Just Mortgage fraudulently transferred its assets in late 2010 and early 2011.  The court recognizes the circumstantial nature of proof inherent in fraudulent transfer actions and finds plaintiff's request not overbroad.

Accordingly, plaintiff's motions for orders authorizing and directing the Internal Revenue Service and United States Department of Housing and Urban Development to produce the financial information of Just Mortgage for the years 2006 through 2012 are sustained.

## IV. MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiff moves to strike defendants' affirmative defenses, arguing that affirmative defenses are insufficiently plead, redundant, and immaterial.  (Doc. 267.)  Defendants Chang Hwan Choi and Eun H. Choi assert thirty-six affirmative defenses in their answer.[3]  (Doc. 261.)  Defendant RMK Financial, Inc., filed its answer separately with the same affirmative defenses.  (Doc. 262.)  Defendants concede that the affirmative defenses of full integration and bona fide error should be stricken.  (Doc. 287 at 12.)

Fed. R. Civ. P. 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1382) rev'd on other grounds, 510 U.S. 517 (1994).  A court possesses liberal discretion when

---

[3] The court notes that the "affirmative defenses" asserted by defendants include legal principles that are not affirmative defenses considering the allocation of burden of proof.  BLACK'S LAW DICTIONARY (9th ed. 2009) ("The defendant bears the burden of proving an affirmative defense.").  For instance, defendants plead failure of condition precedent and prior breach, which are included as elements of plaintiff's original breach of contract claim.  See Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010).  Nevertheless, for purposes of this opinion, the court will refer to the asserted defenses as "affirmative defenses."

ruling on motions to strike under Rule 12(f).  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  In ruling on a motion to strike, the Court "must view the pleadings in the light most favorable to the pleader."  Morgan v. Midwest Neurosurgeons, LLC, 2011 WL 2728334, *2 (E.D. Mo. 2011).  Generally, a motion to strike is disfavored because it is considered an "extreme measure" and thus is infrequently granted.  Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000).

Further, "a party must make a showing of prejudice before a court will grant a motion to strike."  Factory Mut. Ins. Co. v. Nebraska Beef, Inc., 2009 WL 2886315, *2 (D. Neb. 2009).  "The prejudice requirement is satisfied if striking the [matter] would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resource litigating irrelevant issues that will not affect the case's outcome.  Fluid Control Products, Inc. v. Aeromotive, Inc., 2010 WL 427765, *2 (E.D. Mo. 2010).  Plaintiff alleges that it suffers prejudice by the inability to enforce its judgment and from the expense and burden resulting from defendant's affirmative defenses.  (Doc. 293 at 4.)  This is a sufficient showing of prejudice.

Plaintiff objects to several alleged affirmative defenses on the basis that defendants plead them without factual support.  However, this court has previously held that affirmative defenses are not required to be initially pled according to the plausibility standard set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), which requires parties to plead "enough facts to state a claim to relief that is plausible on its face."  Hayden v. United States, 2013 WL 5291755, *3 (E.D. Mo. 2013).  Rather, affirmative defenses must be initially plead according to Fed. R. Civ. P. 8(b)'s requirement that a defense be stated "in short and plain terms." Id.

### Affirmative Defense of Failure to State a Claim

Defendants assert failure to state a claim upon which relief can be granted as an affirmative defense, stating "The Supplemental Complaint in its entirety and Plaintiff's cause of action filed herein fail to state facts sufficient to constitute a cause of action against Defendants." (Docs. 261, 262 at ¶ 63.)  Plaintiff argues that failure to state a claim is not an affirmative defense but asserts a defect in plaintiff's pleadings.  However, Fed. R. Civ. P. 12 governs motions for failure to state a claim and expressly allows failures to state a claim to be raised in pleadings.  Fed. R. Civ. P. 12(h)(2)(A).  Plaintiff also argues that it sufficiently plead its claims.

-11-

The court declines to consider the merits of this argument without defendants further briefing the alleged insufficiency of plaintiff's supplemental complaint.  See Fluid Control Products, Inc. v. Aeromotive, Inc., 2010 WL 427765, *3 (E.D. Mo. 2010).  Moreover, the court perceives no prejudicial effect of burdensome discovery or litigating unnecessary issues by allowing failure to state a claim to remain in defendants' pleadings.  Accordingly, regarding the affirmative defense of failure to state a claim, plaintiff's motion to strike is denied.

Affirmative Defense of Statute of Limitations

Defendants assert statute of limitations as an affirmative defense, stating "The Supplemental Complaint in its entirety and Plaintiff's cause of action filed herein fail to state facts sufficient to constitute a cause of action against Defendants."  (Docs 261, 262 at ¶ 64.) Plaintiff argues the relevant statutes of limitations do not bar its claims.  After examination of the relevant statutes of limitations and due to the early stage of these proceedings, the court cannot conclude that the affirmative defense of statute of limitations does not bar plaintiff's claims.  See Mo. Rev. Stat. § 428.049.  Accordingly, regarding the affirmative defense of statute of limitations, plaintiff's motion to strike is denied.

Affirmative Defense of Lack of Privity

Defendants assert lack of privity as an affirmative defense, stating, "To the extent that there was a lack of privity of contract between Plaintiff and Defendants, there can be no recovery for breach of contract or warranty."  (Docs 261, 262 at ¶ 65.)  Plaintiff's theories of alter ego liability and successor liability against defendants Chang Hwan Choi, Eun. H. Choi, and RMK Financial Corp. do not require that they be parties to the contracts in the literal sense.  See Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 773 (Mo. Ct. App. 1994); Chem. Design, Inc. v. Am. Standard, Inc., 847 S.W.2d 488, 491 (Mo. Ct. App. 1993).  Moreover, Missouri courts have applied these theories in actions with no contractual privity between the litigants, indicating that privity is not a necessary element. Chem. Design, Inc., 847 S.W.2d at 489 (indemnity action for personal injury judgment); Thomas Berkeley Consulting Eng'r, Inc. v. Zerman, 911 S.W.2d 692, 695 (Mo. Ct. App. 1995) (wrongful garnishment action).  Accordingly, regarding the affirmative defense of lack of privity, plaintiff's motion to strike is sustained.

-12-

### Affirmative Defense of the Covenant of Good Faith and Fair Dealing

Defendants assert the implied covenant of good faith and fair dealing as an affirmative defense, stating:

> To the extent there was any enforceable agreement between Plaintiff and Defendants, each such agreement is accompanied by a covenant of good faith and fair dealing in fulfilling its terms and conditions.  Plaintiff engaged in acts, omissions, and/or courses of conduct that constitutes a breach of the covenant and accompany duty owed to Defendants, excusing Defendants from performing any obligations, if any, under the contract, and barring Plaintiff from recovering the relief it seeks, or any other relief.

 (Docs 261, 262 at ¶ 66.)

Plaintiff alleges that defendants are liable for breach of the contract for the sale of mortgages.  (Doc. 252 at ¶¶ 52, 58.)  The court has determined that plaintiff did not violate the implied covenant of good faith and fair dealing regarding that contract.  (Docs. 187, 211.) Moreover, the court has issued a final judgment in the underlying action.   (Doc. 243.) Accordingly, regarding the affirmative defense of the implied covenant of good faith and fair dealing, plaintiff's motion to strike is sustained.


### Affirmative Defenses of Lack of Notice, Prior Breach, and Failure of Condition Precedent

Defendants assert the following affirmative defenses:

> Plaintiff's failure to timely notify Defendant of any alleged breach or damages which any party may have sustained, pursuant to the purported agreement, bars any relief for Plaintiff under the First Amended Complaints or otherwise.

> To the extent there was any enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered, such performance has been excused by Plaintiff's prior material breach of contract.

> To the extent that there was an enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered or excused, not all conditions precedents to Defendant's performance obligations have occurred and nonperformance by Defendant is excused, and therefore the relief Plaintiff seeks under the First Amended Complaint, or any other relief if barred.

(Docs 261, 262 at ¶¶ 67, 68, 70.)  Defendant further states, "Lack of notice, as applied here, alleges that Plaintiff failed to provide Defendants with notice to cure a default and/or protect its interests."  (Doc. 287 at 6.)

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010).  "A condition precedent is a condition which must be fulfilled before the duty to perform an existing contract arises."  Gillis v. New Horizon Dev. Co., Inc., 664 S.W.2d 578, 580 (Mo. Ct. App. 1983).  Notice of breach and opportunity to cure is "a contractual condition precedent to bringing suit."  Donovan v. Las Brands, Inc., 242 S.W.3d 487, 487 (Mo. Ct. App. 2008).

The sole agreement alleged in the plaintiff's first amended complaint is the contract for sale of mortgages.  (Doc. 29.)  In sustaining plaintiff's motions for summary judgment, the court impliedly found the fulfillment of all necessary condition precedents for plaintiff's breach of contract claim.  (Docs. 187, 211.)  Further, the court impliedly found that plaintiff performed its contractual obligations, which equates to finding that plaintiff did not breach the contract.  (Id.) Additionally, the court has granted the relief requested in plaintiff's first amended complaint. (Id.)  Moreover, the court has issued final judgment in the underlying action.   (Doc. 243.) Accordingly, regarding the affirmative defenses of lack of notice, prior breach, and failure of condition precedent, plaintiff's motion to strike is sustained.

Affirmative Defense of Discharge of Obligation

Defendants assert discharge of obligation as an affirmative defense, stating, "Any purported obligation alleged in the First Amended Complaint which Defendant may have owed to Plaintiff, if any, has been discharged and extinguished through the acts, omissions, and/or courses of conduct of Plaintiff."  (Docs 261, 262 at ¶ 69.)  Plaintiff's first amended complaint does not allege that defendants Chang Hwan Choi, Eun H. Choi, and RMK Financial owed obligations to plaintiff.  (Doc. 29.)  Accordingly, regarding the affirmative defense of discharge of obligation, plaintiff's motion to strike is sustained.

-14-

<u>Affirmative Defenses of Assumption of Risk and Comparative Fault</u>

Defendants assert the following affirmative defenses:

Plaintiff assumed the risk of damages of which it complains in that at the time and place mentioned in the First Amended Complaint, Plaintiff, with knowledge of the danger to which it was exposed, freely and voluntarily placed itself in a position of danger and exposure to the danger to which it was exposed, freely and voluntarily placed itself in a position of danger and exposure to the damages of which it now complains.

Plaintiff failed to exercise reasonable and ordinary care, caution or prudence in matters that are subject of the First Amended Complaint in order to avoid the alleged matters.  The resulting injuries or damages, if any there was, referred to in the Supplemental Complaint, were proximately caused and contributed to by the negligence or actions of Plaintiff and that Defendants are entitled to apportionment with Plaintiff according to Plaintiff's responsibility for any injuries or damages it received, if any there was.

That any and all events and happenings in connection with the incident complained of in the First Amended Complaint and the resulting injuries or damages, if any there were, referred to therein, were proximately caused and contributed to by the negligence or actions of third parties either named or unnamed and that JMI is entitled to an apportionment among all such parties according to their responsibility for any injuries or damages received by Plaintiff, if any there were.

(Docs 261, 262 at ¶¶ 71, 72, 73.)

Defendants argue that the affirmative defenses apply to plaintiff's allegations of fraud. Missouri has adopted "the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act §§ 1–6, 12 U.L.A. Supp. 35–45 (1983)." <u>Gustafson v. Benda</u>, 661 S.W.2d 11, 15-16 (Mo. 1983).  The Uniform Comparative Fault Act defines fault as including "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability."  Uniform Comparative Fault Act § 1(b).  The comments state, "The Act does not apply to intentional torts."  <u>Id.</u>, cmt. b. Similarly, assumption of risk also does not apply to intentional torts.  <u>Benson v. Jim Maddox Nw. Imports, Inc.</u>, 728 S.W.2d 668, 669 (Mo. Ct. App. 1987).   Under Missouri law, the definition of fraud includes "a willful intent to deceive."  <u>Memco, Inc. v. Chronister</u>, 27 S.W.3d 871, 875 (Mo. Ct. App. 2000); <u>Harris v. Penninger</u>, 613 S.W.2d 211, 214 (Mo. Ct. App. 1981).

-15-

Because fraud implies intentional conduct, the doctrines of assumption of the risk and comparative fault do not apply to plaintiff's allegations of fraud. Accordingly, regarding the defenses of assumption of the risk and comparative fault, plaintiff's motion to strike is sustained.

### Affirmative Defense of Several Liability for Non-Economic Damages

Defendants assert several liability as an affirmative defense, stating:

> Defendants are informed and believes and on that basis alleges that parties both served and unserved, named and unnamed, and Plaintiff are in some manner or percentage responsible for Plaintiff's damages, if any, and Defendants requires an order from the trier of fact setting forth separate judgments, against each and every party, named and unnamed, served and unserved, and Plaintiff for the amount of all damages that may be recovered by Plaintiff in direct proportion to the percentage of fault of each part, named and unnamed, served and unserved, and Plaintiff, pursuant to Mo. Rev. Stat. section 537.067.

(Docs 261, 262 at ¶ 74.)

Defendants argue that the affirmative defenses apply to plaintiff's allegations of fraud. "[I]t is a longstanding principle of Missouri tort law that "a plaintiff may sue all or any of the joint or concurrent tort-feasors and obtain a judgment against all or any of them." Wagner v. Bondex Int'l, Inc., 368 S.W.3d 340, 359 (Mo. Ct. App. 2012). Nevertheless, defendants are only "severally liable for the percentage of punitive damages for which fault is attributed to such defendant by the trier of fact." Mo. Rev. Stat. § 537.067.2. The Uniform Fraudulent Transfer Act allows awards of punitive damages. Volk Const. Co. v. Wilmescherr Drusch Roofing Co., 58 S.W.3d 897, 900 (Mo. Ct. App. 2001). In the supplemental complaint, plaintiff has requested punitive damages. (Doc. 252 at 14.) Accordingly, regarding the affirmative defense of several liability, plaintiff's motion to strike is denied.

### Affirmative Defenses of Mistake of Fact and Mistake of Law

Defendants assert the following affirmative defenses:

> To the extent there was any enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered, such agreement was entered into while the parties were acting under a mutual mistake of one or more facts that were a material factor in inducing the purported contract, if any, and would not have been entered into had the true facts been known.

> To the extent there was any enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered, such agreement

was entered into while the parties were acting under a mutual mistake or mistakes regarding the law applicable to the subject matter of the purported contract, if any, and this mistaken belief was a material fact in inducing the purported contract, if any, and Defendant would not have entered into the purported contract, if any, had it correctly understood the applicable law and its legal effect.

To the extent there was any enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered, at the time of the alleged agreement, if any, Defendant was acting under a mistaken belief as to one or more facts that were a material factor in inducing the purported contract, if any, and would not have entered into the purported contract, if any, had the true facts been known.

To the extent there was any enforceable agreement between Plaintiff and Defendant as to which full performance has not been rendered, at the time of the alleged agreement, if any, Defendant was acting under a mistake or mistakes with respect to the law applicable to the subject matter of the purported contract, if any, and this mistaken belief.

(Docs 261, 262 at ¶¶ 75-78.)

The sole agreement between plaintiff and any defendant alleged by plaintiff is the contract for sale of mortgages.  (Docs. 29, 252.)  In sustaining plaintiff's motions for summary judgment, the court impliedly found that contractual defenses did not bar plaintiff's breach of contract claim.  (Docs. 187, 211.)  Moreover, the court has issued final judgment on the underlying action.  (Doc. 243.)  Accordingly, regarding the affirmative defenses of mistake of fact and mistake of law, plaintiff's motion to strike is sustained.

<u>Affirmative Defenses of Failure to Mitigate and Consent</u>

Defendants assert the following affirmative defenses:

To the extent that any damages sought in the Supplemental Complaint arise from the failure of Plaintiff to fulfill their duty to mitigate damages, recovery is precluded.

Plaintiff claims against Defendant are barred in that any conduct engaged in by Defendant was privileged and/or fully consented to by the parties.

(Docs 261, 262 at ¶¶ 79, 82.)

The court cannot find at this time that these affirmative defenses are insufficiently plead or redundant, impertinent, immaterial, or scandalous.  Accordingly, regarding the affirmative defenses of failure to mitigate and consent, plaintiff's motion to strike is denied.

<u>Affirmative Defense of Absence of Proximate Causation</u>

Defendants allege absence of proximate causation as an affirmative defense, stating, "The acts, omissions, and/or courses of conduct of Defendant were not the proximate cause of the losses, damages, or injuries alleged in the First Amended Complaint."  (Docs 261, 262 at ¶ 80.)  "Proximate cause is not causation in fact, but is a limitation the law imposes upon the right to recover for the consequences of a negligent act."  <u>Simonian v. Gevers Heating & Air Conditioning, Inc.</u>, 957 S.W.2d 472, 475 (Mo. Ct. App. 1997).  Plaintiff does not allege negligence in the first amended complaint.  (Doc. 29.)  Accordingly, the affirmative defense of absence of proximate causation, plaintiff's motion to strike is sustained.


<u>Affirmative Defense of Acquiescence</u>

Defendants allege acquiescence as an affirmative defense, stating, "Plaintiff acquiesced to any alleged acts and/or course of conduct by Defendant claimed by the Plaintiff to be in breach of contract in the Supplemental Complaint."  (Docs 261, 262 at ¶ 82.)  The sole agreement between plaintiff and defendants alleged by plaintiff's supplemental complaint is the contract for sale of mortgages.  (Doc. 252.)  In sustaining plaintiff's motions for summary judgment, the court impliedly found that contractual defenses did not bar plaintiff's breach of contract claim.  (Docs. 187, 211.)  Moreover, the court has issued final judgment on the underlying action. (Doc. 243.)  Accordingly, regarding the affirmative defenses of acquiescence, plaintiff's motion to strike is sustained.


<u>Affirmative Defenses of Estoppel and Waiver</u>

Defendants allege the following affirmative defenses:

Plaintiff is estopped and barred from any relief for the matters set forth in the Supplemental Complaint by reason of its failure to timely notify Defendant of any alleged breach.

Plaintiff failed to provide Defendant notice, pursuant to the purported agreement, of any alleged breach by Defendant and has, therefore, waived any right to relief for the matters set forth in the Supplemental Complaint.

(Docs 261, 262 at ¶¶ 84, 85.)

The sole agreement between plaintiff and defendants alleged by plaintiff's supplemental complaint is the contract for sale of mortgages.  (Doc. 252.)  In sustaining plaintiff's motions for summary judgment, the court impliedly found that failure to notify did not bar plaintiff's breach of contract claim.  (Docs. 187, 211.)  Moreover, the court has issued final judgment on the underlying action.  (Doc. 243.)  Accordingly, regarding the affirmative defenses of estoppel and waiver, plaintiff's motion to strike is sustained.

### Affirmative Defense of Laches and Unclean Hands

Defendants allege the doctrines of laches and unclean hands as affirmative defenses, stating:

> Plaintiff has inexcusably and unreasonably delayed the filing of this action, causing substantial prejudice to Defendant and is, therefore barred from any recovery for the matters set forth in the Supplemental Complaint under the Doctrine of Laches.

> Plaintiff has engaged in acts, omissions, and/or courses of conduct that preclude Plaintiff from any relief under the Doctrine of Unclean Hands.

(Docs 261, 262 at ¶¶ 83, 86.)

Plaintiff argues that the doctrines of laches and unclean hands do not apply to actions at law.  The doctrines do not apply to actions at law.  UAW-CIO Local No. 31 Credit Union v. Royal Ins. Co., Ltd., 594 S.W.2d 276, 281 (Mo. 1980) (laches); Karpierz v. Easley, 68 S.W.3d 565, 572 (Mo. Ct. App. 2002) (unclean hands).  However, the UFTA expressly allows equitable remedies.  Mo. Rev. Stat. § 428.039.  Additionally, the theory of alter ego liability sounds in equity.  Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 773 (Mo. Ct. App. 1994) ("A court may, pursuant to its equitable powers, 'disregard the separate legal entity of the corporation and the individual where the separateness is used as a subterfuge to defraud a creditor.'").  Accordingly, regarding the affirmative defenses of laches and unclean hands, plaintiff's motion is denied.

### Affirmative Defense of Res Judicata

Defendants allege res judicata as an affirmative defense, stating, "Plaintiff's claims are barred by the doctrine of res judicata."  (Docs 261, 262 at ¶¶ 87.)  Defendants further state,

"Defendants will be able to prove that the final judgment obtained against JMI should preclude Plaintiff from then obtaining the same from the newly supplemented Defendants."  (Doc. 287 at 11.)

"For res judicata to apply, 'four identities' must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made."  Patrick V. Koepke Const., Inc. v. Woodsage Const. Co., 119 S.W.3d 551, 555 (Mo. Ct. App. 2003).  The defendants added as parties by the supplemental complaint, defendants Chang Hwan Choi, Eun H. Choi, and RMK Financial are not identical to Just Mortgage, the sole defendant in the underlying suit.  (See Docs. 29, 252.)  Further, the causes of action in plaintiff's supplemental complaint differ from those in plaintiff's first amended complaint.  (Id.)  Succinctly, plaintiff's first amended complaint alleged that Just Mortgage breached the contract; in plaintiff's supplemental complaint, plaintiff alleges through various theories that defendants Chang Hwan Choi, Eun H. Choi, and RMK Financial are liable for the satisfaction of the judgment.  (Id.)  Accordingly, regarding the affirmative defense of res judicata, plaintiff's motion to strike is sustained.

### Affirmative Defense of Privilege

Defendants allege privilege as an affirmative defense, stating, "Defendant's alleged wrongful actions, if done at all, were justified and/or privileged in that Defendant was merely acting in good faith and permissibly pursuing its rights and economic best interests."  (Docs 261, 262 at ¶ 88.)  The court can find no privilege under Missouri law relevant to the claims of fraudulent transfer, alter ego, or successor liability or privilege afforded on the basis of good faith and pursuit of rights and economic best interests.  Accordingly, regarding the affirmative defense of privilege, plaintiff's motion is sustained.

### Affirmative Defense of Uncertainty

Defendants allege uncertainty as an affirmative defense, stating, "Plaintiff is not entitled to recover under any cause of action alleged in the Supplemental Complaint because its damages are uncertain, speculative, or incapable of reasonable ascertainment."  (Docs 261, 262 at ¶ 89.)  In plaintiff's supplemental complaint, plaintiff's requests for damages are limited to the $8,806,276.82 judgment against Just Mortgage and punitive damages.  (Doc. 252 at 14-15.)  The

amount of the judgment is certain.  (Doc. 243.)  Although the amount of the punitive damages is not known, the amount of punitive damages awarded rests within the discretion of the fact-finder.  See Labrier v. Anheuser Ford, Inc., 621 S.W.2d 51, 58 (Mo. 1981).  Accordingly, regarding the affirmative defense of uncertainty, plaintiff's motion to strike is sustained.

Affirmative Defense of Intervening Cause

Defendants allege intervening cause as an affirmative defense, stating, " Any injuries or damages complained of by Plaintiff were proximately caused or contributed to by the negligence of other parties, persons or entities and said negligence was an intervening and superseding cause of injuries and damages, if any, of which Plaintiff complains."  (Docs 261, 262 at ¶ 90.)  The function of the intervening cause doctrine is to negate the element of proximate cause.  Buchholz v. Mosby-Year Book, Inc., 969 S.W.2d 860, 862 (Mo. Ct. App. 1998).  As set forth above, the concept of proximate cause applies to negligence torts.  Simonian v. Gevers Heating & Air Conditioning, Inc., 957 S.W.2d 472, 475 (Mo. Ct. App. 1997).  Plaintiff alleges no negligent tort.  (Doc. 252.)  Accordingly, regarding the affirmative defense of intervening cause, plaintiff's motion to strike is sustained.

Affirmative Defenses of Third Party's Failure and Indemnification

Defendants allege the following affirmative defenses:

Plaintiff's damages, if any, were the result of a third party's failure to honor obligations to Plaintiff.

Defendant is entitled to indemnification, either in whole or in part, from all persons or entities whose acts proximately contributed to Plaintiff's damages, if any.

(Docs. 261, 262 at ¶¶ 91-92.)

Missouri law recognizes contractual and non-contractual indemnity.  Beeler v. Martin, 306 S.W.3d 108, 110-11 (Mo. Ct. App. 2010).  Defendants speaks in terms of proximate contribution, implying that they allege non-contractual indemnity.

To establish a claim for non-contractual indemnity, which is also referred to as common law indemnity or equitable indemnity, the plaintiff must show:

(1) the discharge of an obligation by the plaintiff;

(2) the obligation discharged by the plaintiff is identical to an obligation owed by the defendant; and

(3) the discharge of the obligation by the plaintiff is under such circumstances that the obligation should have been discharged by the defendant, and defendant will be unjustly enriched if the defendant does not reimburse the plaintiff to the extent that the defendant's liability has been discharged.

Beeler, 306 S.W.3d at 111; State ex rel. Manchester Ins. & Indem. Co. v. Moss, 522 S.W.2d 772, 774 (Mo. 1975).  The elements reveal that defendants' affirmative defense of third party failure merely restates the indemnification allegation.  Moreover, the Beeler language above indicates that indemnification is not a defense, affirmative or otherwise, but a claim that must be asserted against another party, and defendants have filed no counterclaim complaint against plaintiff. Accordingly, regarding the defense of third party failure and indemnification, plaintiff's motion to strike is sustained.

### Affirmative Defense of Good Faith Compliance

Defendants allege good faith compliance as an affirmative defense, stating, "Defendant contends that its actions in this matter, whether performed or omitted, were in good faith conformity with the rules, regulations, and/or interpretation of the Board of Governors of the Federal System."  (Docs. 261, 262 at ¶ 94.)  The affirmative defense of good faith compliance as stated by defendant applies to violations of the Federal Truth-in-Lending Act.  15 U.S.C. § 1640(f); see Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 882 n.9 (2011) (describing the statutory provision as a defense to Truth-in-Lending Act violations).  Plaintiff alleges no violations of the Truth-in-Lending Act.  (Doc. 252.)  Accordingly, regarding the affirmative defense of good faith compliance, plaintiff's motion to strike is sustained.

### Affirmative Defense of Abstention

Defendants allege abstention as an affirmative defense, stating, "Defendant contends that [sic] there already exists a comprehensive administrative or regulatory scheme to redress Plaintiff's claims and that this Court should abstain from hearing Plaintiff's claims."  (Docs. 261, 262 at ¶ 95.)  "Abstention refers to " a court-made rule . . . built around the principle that, with

-22-

limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31 (1st Cir. 2004).   Abstention as alleged by defendants is inapplicable to this case because UFTA, alter ego, and successor liability claims are litigated in court rather than under any administrative or regulatory scheme.   See e.g., Volk Const. Co. v. Wilmescherr Drusch Roofing Co., 58 S.W.3d 897 (Mo. Ct. App. 2001) (UFTA); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771 (Mo. Ct. App. 1994) (alter ego); Chem. Design, Inc. v. Am. Standard, Inc., 847 S.W.2d 488 (Mo. Ct. App. 1993) (successor liability).   Accordingly, regarding the affirmative defense of abstention, plaintiff's motion to strike is sustained.

### Affirmative Defense of Impossibility of Equitable Relief

Defendants allege impossibility of equitable relief as an affirmative defense, stating, "Defendants contend that the equitable relief sought by Plaintiff against Defendants are impossible to accomplish."  (Docs. 261, 262 at ¶ 97.)  Under Missouri law, equity does not demand the performance of impossible acts.  See State ex rel. Brigance v. Smith, 345 Mo. 793, 798, 135 S.W.2d 355, 358 (1940) ("equity never requires a vain act to be done"); Woodman Acc. & Life Co. v. Puricelli, 669 S.W.2d 64, 65 (Mo. Ct. App. 1984) ("equity does not demand impossible things").  Considering that plaintiff requests equitable relief and has not foreclosed the possibility of requesting additional equitable relief, plaintiff's motion to strike is denied regarding the affirmative defense of impossibility of equitable relief.  (See Doc. 252 at 14-15; Doc. 263 at 5.)

### Affirmative Defense of Offset

Defendants allege offset as an affirmative defense, stating, "Defendants contend that if any liability attaches, that they are entitled to an offset of damages."  (Docs. 261, 262 at ¶ 98.) Under Missouri law, "if a plaintiff stands to recover duplicative damages for the same wrong, a defendant may plead an affirmative defense seeking to offset any judgment against it by any amounts already received by the plaintiff as compensation for that wrong."  Moore Auto. Grp., Inc. v. Lewis, 362 S.W.3d 462, 468 (Mo. Ct. App. 2012).  "To prove a double recovery, a defendant must demonstrate an overlap between: (1) the injuries or damages for which a plaintiff

has received compensation; and (2) the injuries or damages that are the subject of a plaintiff's claim against the defendant." Id. Plaintiff alleges that it would not have filed the supplemental complaint if the judgment had been satisfied. However, the mere allegation that a party's judgment has not been satisfied does not foreclose the affirmative defense of offset. Accordingly, plaintiff's motion to strike is denied regarding the affirmative defense of offset.

## V. CONCLUSION

For the reasons stated above, the motion of plaintiff CitiMortgage, Inc., for provisional remedies under Mo. Rev. Stat. § 428.039 against defendants Chang Hwan Choi and Eun. H. Choi (Doc. 263)  is sustained in part and denied in part.

The motion of plaintiff CitiMortgage, Inc. to compel interrogatories and deposition testimony (Doc. 273) is sustained in part and denied in part.

The motions of plaintiff CitiMortgage for orders authorizing and directing the Internal Revenue Service and United States Department of Housing and Urban Development to produce the financial information of Just Mortgage for the years 2006 through 2012 (Docs. 278, 279) are sustained.

The motion of plaintiff CitiMortgage, Inc. to strike (Doc. 267) is sustained in part and denied in part.

An appropriate Order is issued herewith.


_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**



Signed on December 13, 2013.

-24-